[No. 7,926.—In Bank.]

# PEOPLE *v.* SUPERVISORS OF SACRAMENTO COUNTY.

ASSESSMENT OF RAILROAD PROPERTY — EQUALIZATION — JURISDICTION OF COUNTY BOARDS.—Boards of Supervisors of the several counties through which run railroads operated in more than one county have no jurisdiction to raise or lower the assessments placed upon the property of such roads by the State Board of Equalization.

APPLICATION for a writ of *certiorari.*

*A. L. Hart,* Attorney General, for the Plaintiffs.

Have County Boards of Equalization power to equalize the assessments of railroads made by the State Board of Equalization, under authority conferred by Section 9 of Article xiii of the State Constitution? Are such assessments "county assessments"? Railroads operated in more than one county are required to be assessed as a whole by the State Board of Equalization, and the valuation apportioned to the counties, towns, etc., in which such railroads are located, in

proportion to the number of miles of railway laid in such counties, towns, etc. (Const., art. xiii, §10.)

The assessment is a special and peculiar one, made by the State Board and apportioned to the counties for convenience of collection. Such is the construction put upon it by the Legislature. (Act amending Section 3664, Political Code, approved March 14, 1881, Stats. 1881, p. ——; *Hannibal & St. Jo R. R. Co.* v. *State Board of Equalization,* 64 Mo. 294.) A careful reading of the Constitution would seem to demonstrate that it was never the intention of its framers to give to County Boards any power to interfere with, or in any manner change, assessments made upon the property of a railroad company by the State Board of Equalization; that it was the design of the framers of the Constitution to take away from local authorities all power to deal with such assessments. This conclusion would naturally follow from the fact that Section 10 of Article xiii of the Constitution takes this class of property out of the general rules providing for the assessment of property, and gives to the State Board of Equalization the power to assess railroads running through more than one county, as a whole, and to divide and apportion such assessment to the several counties through which the said roads respectively run, in the proportion that the number of miles of railroad in each county bears to the whole length of road.

Under this system the amount to be apportioned to each county is not necessarily determined by the value of the road within that county; thus, a road running through two counties, may in one of them run over agricultural land of great value, and be constructed of materials of the highest value; in the other county it may be constructed of materials of the lowest value, over lands possessing but little if any worth in the market, and yet, under the Constitution, each mile of that road would be of the same value for the purposes of assessment and taxation. Therefore, in an application before a County Board for the equalization of the assessment placed upon this class of property, evidence tending to show the value of land and material used in the construction of the road within the county over which the particular Board applied to would have jurisdiction, would not tend to illustrate the as-

sessable value of the road in that county; the only means by which that value could be ascertained would be by first ascertaining the full value of the road, then computing its average value per mile, and then determining the proportionate number of miles in that county to the whole length of the road. The means by which such a determination could be had is furnished by the law to the State Board of Equalization alone. Another reason why County Boards of Equalization should not be construed to have the power to equalize the assessment of this kind of property, may be found in the fact, that in conferring upon the State Board of Equalization the power to assess such property, the framers of the Constitution had in view the creation of a system by which there should be assessed upon it a uniform rate per mile, in all the counties through which the road runs. If, then, a County Board of Equalization in one of those counties, without reference to the average rate intended to be fixed by the State Board of Equalization, should disturb the valuation fixed by the latter Board, confining the operation of its order to the limits of its own county, that act alone would destroy the uniformity in the assessment of such property, which is plainly commanded by the Constitution.

*Creed Haymond,* for Defendants.

Under the Constitution and laws of this State, the Board of Equalization of Sacramento County had the authority, and it was their duty, upon proper application, to act upon every assessment contained in the assessment book of that county. (Const. of California, art. xiii; *Wells, Fargo & Co.* v. *State Board of Equalization,* 55 Cal. 191; Political Code, §§ 3628, 3629, 3650, 3654, 3664, 3672, 3673, 3782; *Chicago R. R. Co.* v. *Boone Co.,* 44 Ill. 242; Cooley on Taxation, 266.) If the provisions of the Political Code are construed to give one citizen the right or privilege of an appeal to a local board, and to deny that right to another, then the provisions which deny the right or privilege are in violation of the State Constitution, and must be disregarded. The provisions which deny the right or privilege constitute special legislation upon the subject of assessment and taxation, which is prohibited by the Constitution. (Const., art. iv, § 25,

subd. 10; *Ex parte Westerfield*, 55 Cal. 550.)   The construction contended for by the Attorney General would deny to a general law uniformity of operation, and therefore must not be adopted.   (Const., art. i, §§ 11, 21; art. xiii, § 1; *Brooks v. Hyde*, 37 Cal. 376.)   The framers of the State Constitution did not intend to make the discrimination contended for. If so, their acts to that end are in violation of Section 1 of Article xiv of the Federal Constitution.   The framers of the Constitution did not intend to make the discrimination.   If they did, then their acts in that direction violate the first section of the fourteenth amendment to the Federal Constitution, and are void.   (Fed. Const., art. xiv, § 1; *Ah Fong's Case*, 3 Saw. 157; *Ah Kow's Case*, 5 id. 562; R. S. U. S., § 1977; *Brooks v. Hyde*, 37 Cal. 376.)

McKINSTRY, J.:

This proceeding was brought to test the jurisdiction of the Boards of Supervisors of the several counties, through which run railroads operated in more than one county, to raise or lower the assessments placed upon the property of such roads by the State Board of Equalization.

In Section 9, Article xiii of the Constitution, it is provided: "The Boards of Supervisors of the several counties of the State shall constitute Boards of Equalization for their respective counties, whose duty it shall be to equalize the valuation of the taxable property in the county for the purpose of taxation."   Except with reference to its action in respect to the property of railroads operated in more than one county, the duty of the State Board of Equalization, like that of the County Board, is such as its name imports—to equalize valuations already made.   The State Board equalizes values as between different counties.   The County Board equalizes valuations as between different parcels or articles of property in the same county.   (*Wells, Fargo & Co. v. State Board of Equalization*, 56 Cal. 194.)   The power of the County Boards is limited to the equalization of the valuations of the local Assessors.

With the exception noted, the State Board of Equalization has no original power of assessment.   But it is the manifest intent of the Constitution that the valuation of the railroad

property, mentioned in Section 10 of Article xiii, shall be finally fixed and determined by the State Board of Equalization—the State Board has the exclusive power to assess and equalize its value. Thus the Constitution furnishes a system for the assessment of railroads, operated in more than one county, which is separate and distinct from that provided for the assessment of other property.

The system is prescribed in Section 10 of Article xiii: "The franchises, roadway, roadbed, rails, and rolling stock of all railroads operated in more than one county in this State shall be assessed by the State Board of Equalization, at their actual value, and the same shall be apportioned to the counties, cities and counties, cities, towns, townships, and districts in which such railroads are located, in proportion to the number of miles of railway laid in such counties, cities and counties, cities, towns, townships, and districts."

It can not be doubted (if the Constitution is constitutional) that the State Board of Equalization has power thus to assess the railroad property mentioned in section 10 of article xiii, and to apportion the same to the several counties, etc. The portion of the section quoted is clearly self-executing. We are at a loss to imagine how any statute could make the duty of the State Board any clearer than does this distinct and positive mandate of the Constitution. If any doubt could possibly be built upon the words cited, it would be dispelled by the first clause of the same section: "All property, *except as hereinafter in this section provided,* shall be assessed *in* the county, city, city and county, town, township, or district in which it is situated, *in the manner prescribed by law.*" Thus, by the very language of the Constitution, all other but the railroad property mentioned must be assessed by the local assessors, in the manner prescribed by statute; the railroad property must be assessed in the manner prescribed by the section of the Constitution.

If legislation is necessary (and it be true that none ha' been had) to furnish machinery for transmitting to the several counties official notice of the apportionment made by th State Board of Equalization, or, if the statute in that regar. has not been complied with by the State Board, or, if the tax can not be legally collected for want of any appropriate leg-

islation, no one of such defects or errors authorizes the Board of Supervisors to add to or deduct from the valuation of the State Board. Nay, even if it should be admitted (and we do not admit it), that the provision of the State Constitution which attempts to confer upon the State Board of Equalization the exclusive power of assessing certain property, and of apportioning the tax thereon, is invalid, because in conflict with some provision of the Constitution of the United States, this invalidity would not increase the jurisdiction of the Supervisors as a Board of Equalization. In such case the attempted valuation by the State board would be *void.* Could the Board of Supervisors make a valid assessment by reducing the amount of the *invalid* assessment made by the State Board of Equalization?

The order of respondents purporting to reduce assessments, as set forth in the petition herein, is annulled.

MYRICK, SHARPSTEIN, ROSS, THORNTON, and McKEE, JJ., and MORRISON, C. J., concurred.