SANTA CLARA COUNTY *v.* SOUTHERN PACIFIC RAILROAD COMPANY.

CALIFORNIA *v.* CENTRAL PACIFIC RAILROAD COMPANY.

CALIFORNIA *v.* SOUTHERN PACIFIC RAILROAD COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

Argued January 26, 27, 28, 29, 1886.—Decided May 10, 1886.

The defendant Corporations are persons within the intent of the clause in section 1 of the Fourteenth Amendment to the Constitution of the United

States, which forbids a State to deny to any person within its jurisdiction the equal protection of the laws.

Under the constitution and laws of California, relating to taxation, fences erected upon the line between the roadway of a railroad and the land of coterminous proprietors are not part of "the roadway," to be included by the State Board in its valuation of the property of the corporation, but are "improvements" assessable by the local authorities of the proper county.

An assessment of a tax is invalid, and will not support an action for the recovery of the tax, if, being laid upon different kinds of property as a unit, it includes property not legally assessable, and if the part of the tax assessed upon the latter property cannot be separated from the other part of it.

The State Board of Equalization of California were required by law to assess the franchise, roadway, &c., of all railroads operated in more than one county and apportion the same to the different counties in proportion to the number of miles of railway in each. They made such assessment of the Southern Pacific Railroad, improperly including therein the fences between the roadway and the coterminous proprietor, and apportioned it and returned it as required to the different counties. In a suit by one of the counties to recover its proportion of the tax levied in accordance with such apportionment and return, the court below, at the trial, found that "said fences were valued at $300 per mile," which was the only finding on the subject; and it did not appear that the county, plaintiff, offered to take judgment for a sum excluding the rate on the value of the fences within the county at that valuation. *Held*, (1) That the finding was too vague and indefinite to serve as a basis for estimating the aggregate valuation of the fences included in the assessment, or the amount thereof apportioned to the respective counties; (2) That, under the circumstances, the court could not assume that the State Board included the fences in their assessment at the rate of $300 per mile for every mile of the railroad within the State, counting one or both sides of the roadway; and could not, after eliminating that amount from the assessment, give judgment for the balance of the tax, if any.

These actions, which were argued together, were brought to recover unpaid taxes assessed against the several railroad corporations, defendants, under the laws of the State of California. The main—almost the only—questions discussed by counsel in the elaborate arguments related to the constitutionality of the taxes. This court, in its opinion passed by these questions, and decided the cases upon the questions whether under the constitution and laws of California, the fences on the line of the railroads should have been valued and assessed, if at all, by the local officers, or by the State Board of Equalization; whether,

on the record, the assessments and taxation upon the fences are separable from the rest of the assessment and taxation; and what was the effect of the record upon the rights of the State and the county.

One of the points made and discussed at length in the brief of counsel for defendants in error was that "Corporations are persons within the meaning of the Fourteenth Amendment to the Constitution of the United States." Before argument

MR. CHIEF JUSTICE WAITE said: The court does not wish to hear argument on the question whether the provision in the Fourteenth Amendment to the Constitution, which forbids a State to deny to any person within its jurisdiction the equal protection of the laws, applies to these corporations. We are all of opinion that it does.

*Mr. D. M. Delmas* and *Mr. A. L. Rhodes* for Santa Clara County. On the points on which the decision turned, *Mr. Delmas* said as follows:

I now take leave of the Federal questions in this cause, and proceed to examine briefly some minor points which include no question of constitutional law, but simply refer to modes of procedure under the statutes of the State.

Objection is made to a recovery here because it is claimed that the fences on the line of the road were improperly included in the assessment of the roadway, because, in the first place, they were not proved to be the property of defendant, and secondly, they were not within the jurisdiction of the Board of Equalization. It is said that the plaintiff ought to have proved that the fences belonged to defendant. The *prima facie* case made out by the plaintiff's documents establishes everything necessary to its recovery—among which is that the property assessed belongs to the taxpayers assessed. Besides, as a general rule, fences belong to the railroads whose right of way they enclose. Civ. Code, § 485. The defendants, in rebuttal of plaintiff's *prima facie* case, have not proved that they did not own the fences. All the presumptions, then, arising from the plaintiff's *prima facie* case, remain standing in full force.

Such fences are not enumerated by the Code among the

things assessable by local assessors. These are, " the depots, station grounds, shops, buildings, and gravel beds." Political Code, § 3664. Obviously, then, unless the legislature intended they should not be taxed, they are to be assessed by the Board of Equalization as a part of the roadway.

Fences built upon the line of the roadway are a part of the roadway as necessary to its protection. As much so as the railing of a bridge is a part of the bridge, or the framework of a tunnel is part of the tunnel. Such has always been the understanding of the law in California, and the fences have always been assessed by the Board of Equalization.

I have never been able to grasp the proposition that fences are no part of the railroad which they enclose. If the defendant made a conveyance of " its railroad from San Francisco to San José " would not the fences pass by the deed ? Clearly as much so as a sale of my garden would convey the fence which encloses the garden.

*Mr. E. C. Marshall,* Attorney General of California for all the plaintiffs in error.

*Mr. S. W. Sanderson, Mr. George F. Edmunds* and *Mr. William M. Evarts* for defendants in error.

Mr. JUSTICE HARLAN delivered the opinion of the court.

These several actions were brought—the first one in the Superior Court of Santa Clara County, California, the others in the Superior Court of Fresno County, in the same State— for the recovery of certain county and State taxes, claimed to be due from the Southern Pacific Railroad Company and the Central Pacific Railroad Company under assessments made by the State Board of Equalization upon their respective franchises, roadways, roadbeds, rails, and rolling stock. In the action by Santa Clara County the amount claimed is $13,366.53 for the fiscal year of 1882. For that sum, with five per cent. penalty, interest at the rate of two per cent. per month from December 27, 1882, cost of advertising, and ten per cent. for attorney's fees, judgment is asked against the Southern Pacific

Railroad Company. In the other action against the same company the amount claimed is $5029.27 for the fiscal year of 1881, with five per cent. added for non-payment of taxes and costs of collection. In the action against the Central Pacific Railroad Company judgment is asked for $25,950.50 for the fiscal year of 1881, with like penalty and costs of collection.

The answer in each case puts in issue all the material allegations of the complaint, and sets up various special defences, to which reference will be made further on.

With its answer the defendant, in each case, filed a petition, with a proper bond, for the removal of the action into the Circuit Court of the United States for the District, as one arising under the Constitution and laws of the United States. The right of removal was recognized by the State court, and the action proceeded in the Circuit Court. Each case—the parties having filed a written stipulation waiving a jury—was tried by the court. There was a special finding of facts upon which judgment was entered in each case for the defendant. The general question to be determined is, whether the judgment can be sustained upon all, or either, of the grounds upon which the defendants rely.

The case as made by the pleadings and the special finding of facts is as follows:

By an act of Congress, approved July 27, 1866, 14 Stat. 292, the Atlantic and Pacific Railroad Company was created, with power to construct and maintain, by certain designated routes, a continuous railroad and telegraph line from Springfield, Missouri, to the Pacific. For the purpose—which is avowed by Congress—of facilitating the construction of the line, and thereby securing the safe and speedy transportation of mails, troops, munitions of war, and public stores, a right of way over the public domain was given to the company, and a liberal grant of the public lands was made to it. The railroad so to be constructed, and every part of it was declared to be a post route and military road, subject to the use of the United States for postal, military, naval, and all other government service, and to such regulations as Congress might impose for restricting the charges for government transportation. By the

18th section of the act, the Southern Pacific Railroad Company—a corporation previously organized under a general statute of California, passed May 20, 1861, Stat. Cal. 1861, p. 607—was authorized to connect with the Atlantic and Pacific Railroad at such point, near the boundary line of that State, as the former company deemed most suitable for a railroad to San Francisco, with "uniform gauge and rate of freight or fare with said road;" and in consideration thereof, and "to aid in its construction" the act declared that it should have similar grants of land, "subject to all the conditions and limitations" provided in said act of Congress, "and shall be required to construct its road on like regulations, as to time and manner, with the Atlantic and Pacific Railroad." §§ 1, 2, 3, 11 and 18.

In November, 1866, the Atlantic and Pacific Railroad Company, and the Southern Pacific Railroad Company, filed in the office of the Secretary of the Interior their respective acceptances of the act.

By an act of the legislature of California, passed April 4, 1870, to aid in giving effect to the act of Congress relating to the Southern Pacific Railroad Company, it was declared that:

"To enable the said company to more fully and completely comply with and perform the requirements, provisions, and conditions of the said act of Congress, and all other acts of Congress now in force, or which may hereafter be enacted, the State of California hereby consents to said act, and the said company, its successors and assigns, are hereby authorized to change the line of its railroad so as to reach the eastern boundary line of the State of California by such route as the company shall determine to be the most practicable, and to file new and amendatory articles of association, and the right, power, and privilege is hereby granted to, conferred upon, and vested in them to construct, maintain, and operate by steam or other power the said railroad and telegraph line mentioned in said acts of Congress, hereby confirming to, and vesting in, the said company, its successors and assigns, all the rights, privileges; franchises, power and authority conferred upon,

granted to, or vested in said company by the said·acts of Congress, and any act of Congress which may be hereafter enacted."

Subsequently, by the act of March 3, 1871, 16 Stat. 573, Congress incorporated the Texas Pacific Railroad Company, with power to construct and maintain a continuous railroad and telegraph line from Marshall, in the State of Texas, to a point at or near El Paso, thence through New Mexico and Arizona to San Diego, pursuing, as near as might be, the thirty-second parallel of latitude. To aid in its construction, Congress gave it, also, the right of way over the public domain, and made to it a liberal grant of public lands. The 19th section provided :

" That the Texas Pacific Railroad Company shall be, and it is hereby, declared to be a military and post road ; and for the purpose of insuring the carrying of the mails, troops, munitions of war, supplies, and stores of the United States, no act of the company nor any law of any State or Territory shall impede, delay, or prevent the said company from performing its obligations to the United States in that regard : *Provided,* That said road shall be subject to the use of the United States for postal, military, and all other governmental services, at fair and reasonable rates of. compensation, not to exceed the price paid by private parties for the same kind of service, and the government shall at all times have the preference in the use of the same for the purpose aforesaid."

The twenty-third section of that act has special reference to the Southern Pacific Railroad Company, and is as follows :

"SEC. 23. That, for the purpose of connecting the Texas Pacific railroad with the city of San Francisco, the Southern Pacific Railroad Company of California is hereby authorized (subject to the laws of California)· to construct a line of railroad from a point at or near Tehacapa Pass, by way of Los Angeles, to the Texas Pacific railroad, at or near the Colorado River, with· the same rights, grants, and privileges, and subject to the same limitations, restrictions, and conditions, as were granted to said Southern Pacific Railroad Company of California by the act of July twenty-seven, eighteen hundred and sixty-six: *Provided, however,* That this section shall in no way

affect or impair the rights, present or prospective, of the Atlantic and Pacific Railroad Company, or any other railroad company."

Under the authority of this legislation, Federal and State, the Southern Pacific Railroad Company constructed a line of railroad from San Francisco, connecting with the Texas and Pacific Railroad (formerly the Texas Pacific Railroad) at Sierra Banca, in Texas; and with other railroads it is operated as one continuous line (except for that part of the route occupied by the Central Pacific Railroad) from Marshall, Texas, to San Francisco. It is stated in the record that the Southern Pacific Railroad Company of California, since the commencement of this action, has completed its road to the Colorado River, at or near the Needles, to connect with the Atlantic and Pacific Railroad, and that with the latter road it constitutes a continuous line from Springfield, Missouri, to the Pacific, except as to the connection, for a relatively short distance, over the road of the Central Pacific Railroad Company.

On the 17th of December, 1877, the said Southern Pacific Railroad Company, and other railroad corporations, then existing under the laws of California, were legally consolidated, and a new corporation thereby formed, under the name of the Southern Pacific Railroad Company, the present defendant in error, 59.30 miles of whose road is in Santa Clara County and 17.93 miles in Fresno County.

On the 1st of April, 1875, this company was indebted to divers persons in large sums of money advanced to construct and equip its road. To secure that indebtedness, it executed on that day a mortgage for $32,520,000 on its road, franchises, rolling-stock and appurtenances, and on a large number of tracts of land, in different counties of California, aggregating over eleven million acres. These lands were granted to the company by Congress under the above-mentioned acts, and are used for agricultural, grazing, and other purposes not connected with the business of the railroad. Of those patented, 3138 acres are in Santa Clara County and 18,789 acres in Fresno County. When these proceedings were instituted no part of its above mortgage debt had been paid, except the accruing in-

terest and $1,632,000 of the principal, leaving outstanding against it $30,898,000.

In the year 1852 California, by legislative enactment, granted a right of way through that State to the United States for the purpose of constructing a railroad from the Atlantic to the Pacific Ocean—declaring that the interests of California, as well as the whole Union, "require the immediate action of the Government of the United States, for the construction of a national thoroughfare, connecting the navigable waters of the Atlantic and Pacific Oceans, for the purpose of the national safety, in the event of war, and to promote the highest commercial interests of the Republic." Stat. Cal. 1852, p. 150. By an act passed July 1, 1862, 12 Stat. 489, § 1, 8, Congress incorporated the Union Pacific Railroad Company, with power to construct and maintain a continuous railroad and telegraph line to the western boundary of what was then Nevada Territory, " there to meet and connect with the line of the Central Pacific Railroad Company of California." The declared object of extending government aid to these enterprises was to effect the construction of a railroad and telegraph line from the Missouri River to the Pacific, which, for all purposes of communication, travel, and transportation, so far as the public and the General Government are concerned, should be operated "as one connected continuous line." Ibid. §§ 6, 9, 10, 12, 17, 18.

In 1864 the State of California passed an act to aid in carrying out the provisions of this act of Congress, the first section of which declared that :

" To enable said company more fully and completely to comply with and perform the provisions and conditions of said act of Congress, the said company, their successors and assigns, are hereby authorized and empowered, and the right, power, and privilege is hereby granted to, conferred upon, and vested in them, to construct, maintain, and operate the said railroad and telegraph line, not only in the State of California, but also in the said Territories lying east of and between said State and the Missouri River, with such branches and extensions of said railroad and telegraph line, or either of them, as said company may deem necessary or proper, and also the right of way for said railroad and telegraph line over any lands belonging to

this State, and on, over, and along any streets, roads, high-ways, rivers, streams, water, and water courses, but the same to be so constructed as not to obstruct or destroy the passage or navigation of the same, and also the right to condemn and appropriate to the use of said company such private property rights, privileges, and franchises as may be proper, necessary, or convenient for the purposes of said railroad and telegraph, the compensation therefor to be ascertained and paid under and by special proceedings, as prescribed in the act providing for the incorporation of railroad companies, approved May 20th, 1861, and the act supplementary and amendatory thereof, said company to be subject to all the laws of this State concerning railroad and telegraph lines, except that messages and property of the United States, of this State, and of said company shall have priority of transportation and transmission over said line of railroad and telegraph, hereby confirming to and vesting in said company all the rights, privileges, franchises, power, and authority conferred upon, granted to, and vested in said company by said act of Congress, hereby repealing all laws and parts of laws inconsistent or in conflict with the provisions of this act, or the rights and privileges herein granted."

In 1870, the Central Pacific Railroad Company of California and the Western Pacific Railroad Company formed themselves into one corporation under the name of the Central Pacific Railroad Company, the defendant in one of these actions, 61.06 miles of whose road is in Fresno County. The company complied with the several acts of Congress, and there is in operation a continuous line of railway from the Missouri River to the Pacific Ocean, the Central Pacific Railroad Company owning and operating the portion thereof between Ogden, in the Territory of Utah, and San Francisco.

When the present action was instituted against this company the United States had and now have a lien, created by the acts of Congress of 1862 and 1864, for $30,000,000, with a large amount of interest, upon its road, rolling-stock, fixtures and franchises; and there were also outstanding bonds for a like amount issued by the company prior to January 1, 1875, and secured by a mortgage upon the same property.

Such were the relations which these two companies held to

the United States and to the State when the assessments in question were made for purposes of taxation.

It is necessary now to refer to those provisions of the constitution and laws of the State which, it is claimed, sustain these assessments.

The constitution of California, adopted in 1879, exempts from taxation growing crops, property used exclusively for public schools, and such as may belong to the United States, or to that State, or to any of her county or municipal corporations, and declares that the legislature " may provide, except in the case of credits secured by mortgage or trust deed, for a reduction from credits of debts due to *bona fide* residents " of the State. It is provided in the first section of Article XIII. that, with these exceptions—" all property in the State, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law. The word 'property,' as used in this article and section, is hereby declared to include moneys, credits, bonds, stocks, dues, franchises, and all other matters and things, real, personal and mixed, capable of private ownership."

The fourth section of the same article provides:

" A mortgage, deed of trust, contract, or other obligation by which a debt is secured, shall, for the purposes of assessment and taxation, be deemed and treated as an interest in the property affected thereby. *Except as to railroad and other quasi-public corporations*, in case of debts so secured, the value of the property affected by such mortgage, deed of trust, contract, or obligation, less the value of such security, shall be assessed and taxed to the owner of the property, and the value of such security shall be assessed and taxed to the owner thereof, in the county, city, or district in which the property affected thereby is situate. The taxes so levied shall be a lien upon the property and security, and may be paid by either party to such security; if paid by the owner of the security, the tax so levied upon the property affected thereby shall become a part of the debt so secured; if the owner of the property shall pay the tax so levied on such security, it shall constitute a payment thereon, and to the extent of such payment, a full discharge thereof: *Provided*, That if any such security or indebtedness shall be

paid by any such debtor or debtors, after assessment and before the tax levy, the amount of such levy may likewise be retained by such debtor or debtors, and shall be computed according to the tax levy for the preceding year."

The ninth section makes provision for the election of a State Board of Equalization, " whose duty it shall be to equalize the valuation of the taxable property of the several counties in the State for the purpose of taxation." The boards of supervisors of the several counties constitute boards of equalization for their respective counties, and they equalize the valuation of the taxable property therein for purposes of taxation—assessments, whether by the State or county boards, to "conform to the true value in money of the property" contained in the assessment roll.

The tenth section declares :

" All property, *except as hereinafter in this section provided*, shall be assessed in the county, city, city and county, town, township, or district in which it is situated, in the manner prescribed by law. The *franchise, roadway, road-bed, rails, and rolling-stock of all railroads operated in more than one county* in this State shall be assessed by the State Board of Equalization at their actual value, and the same shall be apportioned to the counties, cities and counties, cities, towns, townships, and districts in which such railroads are located, in proportion to the number of miles of railway laid in such counties, cities and counties, cities, towns, townships, and districts."

The assessments in question, it is contended, were made in conformity with these constitutional provisions, and with what is known as § 3664 of the Political Code of California. That section made it the duty of the State Board of Equalization, on or before the first Monday in May in each year to " assess the franchise, roadway, road-bed, rails, and rolling-stock of railroads operated in more than one county—to which class belonged the defendants. It required every corporation of that class, by certain officers, or by such officer as the State Board should designate, to furnish the board with a sworn statement showing, among other things, in detail, for the year ending March 1, the whole number of miles of railway owned, operated, or leased by it in the State, the value thereof

per mile, and all of its property of every kind located in the State; the number and value of its engines, passenger, mail, express, baggage, freight and other cars, or property used in operating and repairing its railway in the State, and on railways which are parts of lines extending beyond the limits of the State. It is also directed that "the said property shall be assessed at its actual value;" that the "assessment shall be made upon the entire railway within the State, and shall include the right of way, road-bed, track, bridges, culverts, and rolling-stock;" and that "the depots, station grounds, shops, buildings, and gravel beds shall be assessed by the assessors of the county where situated, as other property." It further declares:

"On or before the fifteenth day of May, in each year, said board shall transmit to the county assessor of each county through which any railway, operated in more than one county, may run, a statement showing the length of the main track or tracks of such railway within the county, together with a description of the whole of said tracks within the county including the right of way by metes and bounds, or other description sufficient for identification, and the assessed value per mile of the same, as fixed by a pro rata distribution per mile of the assessed value of the whole franchise, roadway, road-bed, rails, and rolling-stock of such railway, within this State. Said statement shall be entered on the assessment roll of the county. At the first meeting of the board of supervisors, after such statement is received by the county assessor, they shall make and cause to be entered in the proper record-book an order stating and declaring the length of the main track, and the assessed value of such railway lying in each city, town, township, school district, or lesser taxing district in their county, through which such railway runs, as fixed by the State Board of Equalization, which shall constitute the taxable value of said property for taxable purposes in such city, town, township, school, road, or other district." Stat. Cal. 1881, ch. 73, § 1, page 82.

These companies, within due time, filed with the State Board the detailed statement required by that section.

At the trials below, no record of assessment against the respective defendants, as made by the State Board, was given in evidence, and there was introduced no written evidence of the

Opinion of the Court.

assessment except an official communication from the State Board to each of the assessors of Santa Clara and Fresno Counties, called, in the special findings, the assessment roll for the particular county. The roll for Fresno county, in 1881, relating to the Southern Pacific Railroad Company, is as follows :

*Original.—Assessment Book of the Property of Fresno County for the year 1881.  Assessed to all known owners or claimants, and when unknown to unknown owners or claimants.*

| Taxpayer's Name. | DESCRIPTION OF PROPERTY. Real estate other than city and town lots. Subdivision of sections or metes and bounds.  City and town lots.  Improvements.  Personal property. | Value of the franchise, roadway, road-beds, rails, and rolling-stock of railroads as apportioned to the county by the State Board of Equalization. | Total value of all property after deductions.  (Changes by the county boards of equalization to be noted in red ink.) | Total value after equalization by the State Board of Equalization. | Total tax. | Remarks. |
|---|---|---|---|---|---|---|
| Southern Pacific Railroad Company. | OFFICE OF THE STATE BOARD OF EQUALIZATION, SACRAMENTO, *May* 14, 1881. To W. H. McKENZIE, *Assessor of Fresno County.* SIR: The State Board of Equalization on the 2nd day of May, 1881, assessed for the year 1881, the Southern Pacific Railroad Company for its franchise, roadway, road-bed, rails, and rolling-stock, in the State of California, in the aggregate sum of $11,739,915. The entire line of main track of said railroad of said company in the said State is 711.51 miles. The length of the main track of said railway in Fresno County is 17.93 miles. The description of the whole of the main track of the railway of the said Southern Pacific Railroad Company, and the right of way for the same, in the county of Fresno, is as follows : Beginning at the town of Huron and running easterly in the direction of Goshen, in Tulare County, to the east line of Fresno County.  The assessed value per mile of said railway, as fixed by a *pro rata* distribution per mile of the assessed value of the whole franchise, roadway, road-bed, rails, and rolling-stock of such railway of the said company within this State is $16,500.  The apportionment of the assessment of the said franchise, roadway, road-beds, rails, and rolling-stock, by this board, for and to Fresno County, is $295,845. WARREN DUTTON, *Chairman,* M. M. DREW, D. M. KENFIELD, T. D. HEISKELL, *State Board of Equalization.* E. W. MASLIN, *Clerk.* | $ 295,845 | $ 602,869 | $ 602,869 | $ cts. 10,246.78 | |

(Duly Certified by the Auditor.)

There were similar rolls in reference to the Central Pacific Railroad in the same county, for the same year, and the Southern Pacific in Santa Clara County for 1882. For each of those years the board of supervisors of the respective counties made an apportionment of the taxes among the legal subdivisions of such counties.

It is stated in the findings that the delinquent lists for those years, so far as they related to the taxes in question, were duly made up in form corresponding with the original assessment roll; that in pursuance of § 3738 of the Political Code of California, the board of supervisors of the respective counties duly passed an order, entered on the minutes, dispensing with the duplicate assessment roll for that year; that the controller of the State transmitted a letter to the tax collector of the county, in pursuance of the provisions of § 3899 of that Code, directing him to offer the property for sale but once, and if there were no *bona fide* purchasers to withdraw it from sale; that the tax collector, in obedience to the provisions of that section, transmitted to the controller, with his endorsement thereon of the action had in the premises, a certified copy of the entry upon the delinquent list relating to the tax in question in these several actions; that such endorsement shows that the tax collector had offered the property for sale and had withdrawn it because there was no purchaser for the same; and that the controller, in pursuance of the provisions of the same section, transmitted to the tax collector of the county a letter directing him to bring suit.

In each case there were, also, the following findings:

" The State Board of Equalization, in assessing said value of said property to and against defendant, assessed the full cash value of said railroad, roadway, road-bed, rails, rolling-stock, and franchises, without deducting therefrom the value of the mortgage, or any part thereof, given and existing thereon as aforesaid, to secure the indebtedness of said company to the holders of said bonds, notwithstanding they had full knowledge of the existence of the said mortgage; and in making said assessment the said State Board of Equalization did not consider or treat said mortgage as an interest in said property, but as-

sessed the whole value thereof to the defendant, in the same manner as if there had been no mortgage thereon."

" The State Board of Equalization, in making the supposed assessment of said roadway of defendant, did knowingly and designedly include in the valuation of said roadway the value of fences erected upon the line between said roadway and the land of coterminous proprietors. Said fences were valued at $300 per mile."

The special grounds of defence by each of the defendants were: 1. That its road is a part of a continuous postal and military route, constructed and maintained under the authority of the United States, by means in part obtained from the General Government; that the company having, with the consent of the State, become subject to the requirements, conditions, and provisions of the acts of Congress, it thereby ceased to be merely a State corporation, and became one of the agencies or instrumentalities employed by the General Government to execute its constitutional powers; and that the franchise to operate a postal and military route, for the transportation of troops, munitions of war, public stores, and the mails, being derived from the United States, cannot, without their consent, be subjected to State taxation. 2. That the provisions of the constitution and laws of California, in respect to the assessment for taxation of the property of railway corporations operating railroads in more than one county, are in violation of the Fourteenth Amendment of the Constitution, in so far as they require the assessment of their property at its full money value, without making deduction, as in the case of railroads operated in one county, and of other corporations, and of natural persons, for the value of the mortgages covering the property assessed; thus imposing upon the defendant unequal burdens, and to that extent denying to it the equal protection of the laws. 3. That what is known as § 3664 of the Political Code of California, under the authority of which in part the assessment was made, was not constitutionally enacted by the legislature, and had not the force of law. 4. That no valid assessment appears in fact to have been made by the State Board. 5. That no interest is recoverable in this action until after judgment. 6.

That the assessment upon which the action is based is void, because it included property which the State Board of Equalization had no jurisdiction, under any circumstances, to assess, and that, as such illegal part was so blended with the balance that it cannot be separated, the entire assessment must be treated as a nullity.

The record contains elaborate opinions stating the grounds upon which judgments were ordered for the defendants. Mr. Justice Field overruled the first of the special defences above named, but sustained the second. The circuit judge, in addition, held that § 3664 of the Political Code had not been passed in the mode required by the State Constitution, and, consequently, was no part of the law of California. These opinions are reported as *The Santa Clara Railroad Tax Case*, in 9 Sawyer, 165, 210.

The propositions embodied in the conclusions reached in the Circuit Court were discussed with marked ability by counsel who appeared in this court for the respective parties. Their importance cannot well be over-estimated ; for, they not only involve a construction of the recent amendments to the National Constitution in their application to the Constitution and the legislation of a State, but upon their determination, if it were necessary to consider them, would depend the system of taxation devised by that State for raising revenue, from certain corporations, for the support of her government. These questions belong to a class which this court should not decide, unless their determination is essential to the disposal of the case in which they arise. Whether the present cases require a decision of them depends upon the soundness of another proposition, upon which the court below, in view of its conclusions upon other issues, did not deem it necessary to pass. We allude to the claim of the defendant, in each case, that the entire assessment is a nullity, upon the ground that the State Board of Equalization included therein property which it was without jurisdiction to assess for taxation.

The argument in behalf of the defendant is : That the State Board knowingly and designedly included in its assessment of " the franchise, roadway, road-bed, rails, and rolling-stock " of

each company, the value of the fences erected upon the line between its roadway and the land of coterminous proprietors; that the fences did not constitute a part of such roadway, and, therefore, could only be assessed for taxation by the proper officer of the several counties in which they were situated; and that an entire assessment which includes property not assessable by the State Board against the party assessed is void, and, therefore, insufficient to support an action, at least, when—and such is claimed to be the case here—it does not appear, with reasonable certainty, from the face of the assessment or otherwise, what part of the aggregate valuation represents the property so illegally included therein.

If these positions are tenable, there will be no occasion to consider the grave questions of constitutional law upon which the case was determined below; for, in that event, the judgment can be affirmed upon the ground that the assessment cannot properly be the basis of a judgment against the defendant.

That the State Board purposely included in its assessment and valuation the fences erected on the line between the railroads and the lands of adjacent proprietors, at the rate of $300 per mile, is undoubtedly true: for it is so stated in the special finding of facts, and that finding must be taken here to be indisputable. It is equally true that that tribunal has no general power of assessment, but only jurisdiction to assess " the franchise, roadway, road-bed, rails, and rolling-stock " of railroad corporations operating roads in more than one county, and that all other property of such corporations, subject to taxation, is assessable only " in the county, city, city and county, town, township, or district, in which it is situated, in the manner prescribed by law." Such is the declaration of the State constitution. *People* v. *Sacramento County*, 59 Cal. 321, 324; Art. XIII. § 10. It must also be conceded that " fences," erected on the line between these railroads and the lands of adjoining proprietors, were improperly included by the State Board in its assessments, unless they constituted a part of the "roadway." Some light is thrown upon this question by that clause of § 3664 of the Political Code of California—which, in the view

we take of these cases, may be regarded as having been legally enacted—providing that "the depots, station grounds, shops, buildings, and gravel beds" shall be assessed in the county where situated as other property. From this it seems, that there is much of the property daily used in the business of a railroad operated in more than one county, that is not assessable by the State Board, but only by the proper authorities of the municipality where it is situated. So that, even if it appeared that the fences assessed by the State Board were the property of the railroad companies, and not of the adjoining proprietors, they could not be included in an assessment by that board unless they were part of the roadway itself; for, as shown, the jurisdiction of that board is restricted to the assessment of the "franchise, roadway, road-bed, rails and rolling-stock." We come back, then, to the vital inquiry, whether the fences could be assessed under the head of roadway? We are of opinion that they cannot be regarded as part of the roadway for purposes of taxation.

The Constitution of California provides that "land and improvements thereon shall be separately assessed." Art. XIII. § 2; and, although that instrument does not define what are improvements upon land, the Political Code of the State expressly declares that the term "improvements" includes "all buildings, structures, fixtures, *fences*, and improvements erected upon or affixed to the land." § 3617. It would seem from these provisions that fences erected upon the roadway, even if owned by the railroad company, must be separately assessed, as "improvements," in the mode required in the case of depots, station grounds, shops, and buildings owned by the company; namely, by local officers in the county where they are situated. The same considerations of public interest or convenience upon which rest existing regulations for the assessments of depots, station grounds, shops, and buildings of a railroad company operated in more than one county, would apply equally to the assessment and valuation for taxation of fences erected upon the line of railway of the same company.

In *San Francisco and North Pacific Railroad Co.* v. *State Board of Equalization*, 60 Cal. 12, 34, which was an applica-

tion, on *certiorari*, to annul certain orders of the State Board assessing the property of a railroad corporation, one of the questions was as to the meaning of the words " road-bed " and " roadway." The court there said : " The road-bed is the foundation on which the superstructure of a railroad rests. Webster. The roadway is the right of way, which has been held to be the property liable to taxation. *Appeal of N. B. & M. R. R. Co.*, 32 Cal. 499. The rails in place constitute the superstructure resting upon the road-bed." This definition was approved in *San Francisco* v. *Central Pacific Railroad Co.*, 63 Cal. 467, 469. In the latter case the question was whether certain steamers owned by the railroad company, upon which were laid railroad tracks, and with which its passenger and freight cars were transported from the eastern shore of the bay of San Francisco to its western shore, where the railway again commenced, were to be assessed by the city and county of San Francisco, or by the State Board of Equalization. The contention of the company was that they constituted a part of its road-bed or roadway, and must, therefore, be assessed by the State Board. But the Supreme Court of the State held otherwise. After observing that all the property of the company, other than its franchise, roadway, road-bed, rails, and rolling-stock, was required by the Constitution to be assessed by the local assessors, the court said : " They are certainly not the franchise of the defendant corporation. They may constitute an element to be taken into the computation to arrive at the value of the franchise of such corporation, but they are not such franchise. It is equally as clear that they are not rails or rolling-stock. . . . Are they, then, embraced within the words roadway or road-bed, in the ordinary and popular acceptation of such words as applied to railroads ? These two words, as applied to common roads, ordinarily mean the same thing, but as applied to railroads their meaning is not the same. The *road-bed* referred to in § 10, in our judgment, is the bed or foundation on which the superstructure of the railroad rests. Such is the definition given by both Worcester and Webster, and we think it correct. The *roadway* has a more extended signification as applied to railroads. In addition to the part denominated

road-bed, the roadway includes whatever space of ground the company is allowed by law in which to construct its road-bed and lay its track. Such space is defined in subdivision 4 of the 17th section and the 20th section of the act 'to provide for the incorporation of railroad companies,' etc., approved May 20, 1861. Stat. 1861, p. 607; *S. F. & N. P. R. R. Co.* v. *State Board*, 60 Cal. 12."

The argument in support of the proposition that these steamers—constituting, as they did, a necessary link in the line of the company's railway, and upon which rails were actually laid for the running of cars—were a part either of the road-bed or roadway of the railroad, is much more cogent than the argument that the fences erected upon the line between a roadway and the lands of adjoining proprietors are a part of the roadway itself. It seems to the court that the fences in question are not, within the meaning of the local law, a part of the roadway for purposes of taxation; but are "improvements" assessable by the local authorities of the proper county, and, therefore, were improperly included by the State Board in its valuation of the property of the defendants.

The next inquiry that naturally arises is, whether the different kinds of property assessed by the State Board are distinct and separable upon the face of the assessment, so that the company being thereby informed of the amount of taxes levied upon each, could be held to have been in default in not tendering such sum, if any, as was legally due? Upon the transcript before us, this question must be answered in the negative. No record of assessment, as made by the State Board, was introduced at the trial, and presumably, no such record existed. Nor is there any documentary evidence of such assessment, except the official communication of the State Board to the local assessors, called, in the findings, the assessment roll of the county. That roll shows only the aggregate valuation of the company's franchise, roadway, road-bed, rails, and rolling-stock in the State; the length of the company's main track in the State; its length in the county; the assessed value per mile of the railway as fixed by the pro rata distribution per mile of the assessed value of its whole franchise, roadway, road-bed, rails,

and rolling-stock in the State; and the apportionment of the property so assessed to the county.

It appears, as already stated, from the evidence, that the fences were included in the valuation of the defendants' property; but under what head, whether of franchise, road-way, or road-bed, does not appear. Nor can it be ascertained, with reasonable certainty, either from the assessment roll or from other evidence, what was the aggregate valuation of the fences, or what part of such valuation was apportioned to the respective counties through which the railroad was operated. If the presumption is, that the State Board included in its valuation only such property as it had jurisdiction under the State constitution to assess, namely, such as could be right-fully classified under the heads of franchise, roadway, road-bed, rails, or rolling-stock, that presumption was overthrown by proof that it did, in fact, include, under some one or more of those heads, the fences in question. It was then incumbent upon the plaintiff, by satisfactory evidence, to separate that which was illegal from that which was legal—assuming for the purposes of this case only, that the assessment was, in all other respects, legal—and thus impose upon the defendant the duty of tendering, or enabling the court to render judgment for, such amount, if any, as was justly due. But no such evidence was introduced. The finding that the fences were valued at $300 per mile is too vague and indefinite as a basis for estimat-ing the aggregate valuation of the fences included in the assess-ment, or the amount thereof apportioned to the respective counties. Were the fences the property of adjacent pro-prietors? Were they assessed at that rate for every mile of the railroad within the State? Were they erected on the line of the railroad in every county through which it was operated, or only in some of them? Wherever erected, were they as-sessed for each side of the railway, or only for one side? These questions, so important in determining the extent to which the assessment included a valuation of the fences erected upon the line between the railroad and coterminous proprietors, find no solution in the record presented to this court.

If it be suggested that, under the circumstances, the court

might have assumed that the State Board included the fences in their assessment, at the rate of $300 per mile for every mile of the railroad within the State, counting one or both sides of the roadway, and, having thus eliminated from the assessment the aggregate so found, given judgment for such sum, if any, as, upon that basis, would have been due upon the valuation of the franchise, road-bed, roadway, rails and rolling-stock of the defendant, the answer is, that the plaintiff did not offer to take such a judgment; and the court could not have rendered one of that character without concluding the plaintiff hereafter, and upon a proper assessment, from claiming against the defendant taxes for the years in question, upon such of its property as constituted its franchise, roadway, road-bed, rails and rolling-stock. The case as presented to the court below, was, therefore, one in which the plaintiff sought judgment for an entire tax arising upon an assessment of different kinds of property as a unit—such assessment including property not legally assessable by the State Board, and the part of the tax assessed against the latter property not being separable from the other part. Upon such an issue, the law, we think, is for the defendant; an assessment of that kind is invalid and will not support an action for the recovery of the entire tax so levied. Cooley on Taxation, 295–6, and authorities there cited; *Libby* v. *Burnham*, 15 Mass. 144, 147; *State Randolph, &c.* v. *City of Plainfield*, 38 N. J. Law (9 Vroom), 93; *Gamble* v. *Witty*, 55 Mississippi, 26, 35; *Stone* v. *Bean*, 15 Gray, 42, 45; *Moshier* v. *Robie*, 11 Maine (2 Fairfield), 137; *Johnson* v. *Colburn*, 36 Vt. 695; *Wells* v. *Burbank*, 17 N. H. 393, 412.

It results that the court below might have given judgment in each case for the defendant upon the ground that the assessment, which was the foundation of the action, included property of material value, which the State Board was without jurisdiction to assess, and the tax levied upon which cannot, from the record, be separated from that imposed upon other property embraced in the same assessment. As the judgment can be sustained upon this ground it is not necessary to consider any other questions raised by the pleadings and the facts found by the court.

It follows that there is no occasion to determine under what circumstances the plaintiffs would be entitled to judgment against a delinquent tax-payer for penalties, interest, or attorney's fees; for, if the plaintiffs are not entitled to judgment for the taxes arising out of the assessments in question, no liability for penalties, interest, or attorney's fees, could result from a refusal or failure to pay such taxes.

*Judgment affirmed.*

California *v.* Northern Railway Company. Error to the Circuit Court of the United States for the District of California. The facts in this case are substantially those which appear in County of Santa Clara, &c. *v.* Railroad Companies, just decided. For the reasons given in the opinion in that case, and upon the ground therein stated, the judgment is

*Affirmed.*