Mr. Justice Cox
delivered the opinion of the court.
This is a matter in controversy between the Alexandria Canal, Railroad and Bridge Company and the District of Columbia.
After the year 1883, under authority of the act of Congress of March 3,1883, the assessor of the District of Columbia proceeded to reassess all the property of the complainant for some of the back years, and the assdlsment was made in the following form, that is to say, the property was described as follows on the tax books for the year 1881, viz.: “ Piers, trunk, bridge and other structures to low water mark, Virginia shore, with the franchise.” That was varied slightly for the years 1881 and 1882 as follows: “Piers, trunk, bridge and other structures to low water mark, Virginia shore. That portion of the real estate of the Alexandria Canal, Railroad and Bridge Company that lies within the District of Columbia, and extends from a point at or near the intersection of Lingan and Bridge streets, in the city of Georgetown, to low water mark on the south bank of the Potomac River, including stone piers, trunk, bridge, and other structures connected with the Alexandria Company’s aqueduct, assessed at $100,000, with the franchise. $100,000 — 85,000.” The assessment for years 1883-84 was in the general form I have above mentioned, “piers, trunk, bridge and structures to low water mark, Virginia shore, with the franchise,” and this is carried forward in subsequent years.
*382 The tax not being paid by the company, the complainant in this equity suit, the property was sold, and was bought in in the name of the District of Columbia. The complainant instituted two proceedings. One was a petition for certiorari, asking the court to have the record of the proceedings of assessment, etc., certified to .this court and that the court would quash the assessment.
Then this bill in equity was filed also, asking the court to enjoin the District of Columbia from setting up any title under and by virtue of this tax sale, and that the court would declare the sale to be void, and that the sale and the assessment prior thereto upon which the same was founded be set aside and held for naught.
Substantially the same case is made out in both of the proceedings and the same relief is asked. The conspicuous feature of the case is that this assessment is upon the tangible property of the complainant, together with the franchise, and a gross sum is assessed as the tax upon both.
It is claimed, on the part of the complainant, in the equity suit, and the petitioner in the law case, that the District of Columbia had no right to tax the franchise of the company, and that the tax being a unit must be wholly good or bad, and that it is bad for the reason mentioned.
The Alexandria Canal Company was incorporated by Congress while Alexandria county was still a part of the District of Columbia, and the office or headquarters of that company was at Alexandria. After the retrocession of the county of Alexandria to the State of Virginia, this became a foreign corporation, and might, as such, have instituted suit in the federal courts.
In 1866, with the subsequent approval of the legislature of Virginia, that company made a lease of its works, the canal running from a point in Georgetown and connected with the Chesapeake and Ohm Canal to the town of Alexandria to certain private individuals, together with all the franchises and rights of that company; and in ISfiT these private individuals assigned this lease and all these franchises to this complainant, the Alexandria Canal, Railroad and Bridge *383 Company, which was incorporated originally by the State of Virginia, and which, therefore, has always been a foreign corporation,
Just before this assignment was made, the State of Virginia authorized the lessees to reconstruct their aqueduct, and also to build in connection with it a bridge, and take tolls for the passage of vehicles and persons over that bridge. That was one of the franchises or privileges assigned to the complainant. Congress, also, afterwards passed an act, which, as far as this District was concerned, conferred upon them the same privilege; so that; as the matter now stands, the franchise of the original Alexandria Canal Company, and the additional franchise conferred by the acts of the Legislature of Virginia and of Congress of 1867 and 1868, became vested in this complainant, which is and always has been a foreign corporation.
Now, although this franchise concerned things corporeal, it is in itself an incorporeal right. It is not very easily seen how it can be divided into parts and apportioned between these jurisdictions. It seems to be an indivisible unit, and if it has any locality at all, it would seem to have that of the corporation to which it was attached, and not to be property within the District of Columbia. It might be a question how far the District of Columbia could be authorized to tax the franchise of a non-resident corporation doing business within the District. But it is clear that the tax laws of the District do not, in terms or by implication, confer on the authorities of the District the power to tax the franchise of a non-resident corporation.
The same remark may be made with reference to the franchise of a resident corporation, as far as relates to taxing it, eo nomine, as something distinct from other taxable interests.
A franchise may be considered where it relates to real property, as real estate; that is to say, it comes within Blackstone’s classification of real estate, as an incorporeal hereditament. But the tax laws of this District contemplate only the taxing of corporeal property as real estate, *384 because they require it to pay a tax by the square, lot or acreage. The language is entirely inapplicable to any incorporeal right, whether real estate or personal. There is a very good reason for it. The stock of a corporation represents all the pi’operty of the corporation, including its franchise and everything that gives it value. Often the franchise is the very thing that gives it value. To avoid double taxation, while the authorities of the District are empowered to tax the aggregate stock of every corporation, they are required to deduct from the value the real estate, and to tax that separately, and that would leave, as subject to taxation, as covered by the stock, all the personal property and franchises. To tax the stock and the franchise would be a double taxation, which it is not to be presumed was intended.
But the power to tax corporeal real estate, and to tax the franchise through the capital stock, as to domestic corporations, is already conferred upon the District authorities. Under no head or enumeration of subjects do we find that a franchise may be taxed as an independent and distinct subject-matter. It seems to us, therefore, that the assessor has no right to assess a tax upon the franchise of this corporation at all, and we cannot, from any evidence or anything in the record, separate the tax on the franchise from that on the rest of the property. It is a gross sum. Then the rule would seem to apply which was laid down by the Supreme' Court in the case decided only the other day — the case of Santa Clara Co. vs. South. Pac. R. R. Co., 118 U. S., 394. The court there says:
“An assessment of a tax is invalid and will not support an action for the recovery of the tax if, being laid upon different kinds of property as a unit, it includes property not legally assessable, and if the part of the tax assessed upon the latter property cannot be separated from the other part of it.”
And precisely the same rule was laid down in this court in the former case between these same parties. (Alexandria Can. R. R. & Bridge Co. vs. District of Columbia, 1 *385 Mackey, 217.) There the assessor had undertaken to assess the tax upon the entire work, including that part which was within the jurisdiction of the State of Virginia, and not taxable here, and the court said:
“ We cannot in this proceeding undertake to deduct for the overcharge by looking through the evidence to ascertain what the respective portions of the bridge originally cost. The franchise to use the bridge, as we have seen, may well enter into the assessment of its value, and we cannot apportion, if we had the right to attempt to do so, the share of the value of this franchise appurtenant to any particular portion of the structure.”
And for that reason the court granted the relief prayed in that case. It has been said, however, as objection to the relief asked in this case, that the party had an opportunity to correct this error hy appeal to the board of equalization. That objection is, however,-answered in the opinion I have just quoted from; that is, the former case decided by this court, where the court says:
“ This is not a case merely of excessive valuation, or of an omission upon the part of officials to comply with the directory provisions of the statute, but it is a claim advanced in this court by the District authorities to levy a tax upon the entire bridge, including that portion within Virginia; and we must, therefore, hold the assessment was illegal, and the collection of the tax should not be enforced.”
Now, this board of equalization had simply a right, so to speak, to surcharge and falsify, that is, to increase on one piece of property and decrease on the other; to equalize the taxation, in other words; but not to decide any question going to the validity of the taxes. Therefore, nothing would have been gained by an appeal to that board, and there is nothing in this objection to prevent the court from granting relief.
We think the complainant is, therefore, entitled to the relief prayed in either form of action, the certiorari or the suit in equity. One is just as effectual as the other. We do not know that it is necessary, however, fox us to pass *386 judgment in both cases j the relief as prayed can be given in either.