Filed Nov. 6, 1883.

———————◆———————

No. 7245.

RAWSON ET AL. *v.* PRATT ET AL.

GOOD-WILL.—*Incident to Locality or Place.—Stock of Merchandise.*—Good-will, as property, is intangible, and merely an incident of other property. As a general rule, it is not an incident of a stock of merchandise, but of locality or place, of the store-room or place of business.

SAME.—*Amount of Annual Sales.—False Representations.—Sufficiency of Counter-Claim.—Measure of Damages.*—In a suit upon certain promissory notes, the defendants, admitting the execution of the notes, alleged, by way of counter-claim, that they were given in consideration of the sale to the defendants by the plaintiffs of their stock of merchandise and of the good-will of the trade and business in which they were then engaged; that to induce the defendants to make such purchase, the plaintiffs represented that their annual sales, in such trade and business, were then and there $30,000; that the defendants relied upon these represen-

tations and were induced thereby, as the plaintiffs well knew, to make such purchase; that the representations were false and known so to be by the plaintiffs at the time, and were by them made for the purpose of cheating and defrauding the defendants in the premises; and that the sales of the plaintiffs in such trade and business were, in truth, only $15,000 per year. The defendants did not aver that they had purchased or procured from the plaintiffs any right or title to, or interest in, their store-room or place of business, or that the plaintiffs owned or controlled, or had any possessory right or interest in such store-room or place of business; but they alleged that they had obtained, as the plaintiffs well knew, a lease for one year of the store-room or place of business, theretofore occupied by the plaintiffs. Upon evidence tending to establish the foregoing facts:

*Held,* that the trial court did not err in instructing the jury that the measure of the defendants' damages, if any, in respect to the good-will of the plaintiffs' trade or business, was the difference between the rental value of a store-room, where the annual sales in such trade or business amounted to $30,000, and of a store-room or place of business where such annual sales were only $15,000.

*Held,* also, that the defendants' counter-claim was bad on demurrer, because it failed to allege that they had carried on any business, for any period of time, in the store-room previously occupied by the plaintiffs, or in any other place, or that the annual sales of the defendants had not been $30,000, or even more.

SUPREME COURT.—*Pleading.*—*Right Judgment.*—*Intervening Errors.*—Where it appears that, upon the statements in the pleadings, the right judgment has been rendered, it will not be reversed by the Supreme Court for intervening errors.

From the Elkhart Circuit Court.

*J. M. Vanfleet* and *J. S. Frazer,* for appellants.
*J. H. Baker* and *J. A. S. Mitchell,* for appellees.

HOWK, J.—In this case the appellees sued the appellants upon three promissory notes, executed by the latter and payable to the former, by their firm name of F. B. Pratt & Co. The cause was put at issue and tried by a jury, and a verdict was returned for the appellees; and over the appellants' motion for a new trial, and their exception saved, judgment was rendered on the verdict.

In this court the appellants have assigned a number of supposed errors; but, in their brief of this cause, their counsel

Rawson *et al. v.* Pratt *et al.*

have discussed such questions only as arise under the alleged error of the court in overruling their motion for a new trial. The other supposed errors will, therefore, be considered as waived.

Before considering any of the questions discussed by the appellants' counsel, we deem it necessary to an intelligible presentation of the points decided, and of the grounds of our decision, that we should first give a summary at least of the case made by the pleadings, of the appellants' defence to the suit upon their notes, and of the appellees' replies thereto. In so doing it will only be necessary for us to give the substance of the fifth paragraph of answer, as the appellants concede that it " covers all the matters set forth in the fourth paragraph."

In the fifth paragraph the appellants alleged, in substance, by way of counter-claim, that on and before the 16th day of September, 1875, the appellees were merchants in the city of Elkhart, Indiana, and had long been engaged in trade in said city as such merchants; that the appellants Rawson and Charles A. Raynolds were citizens of the State of Ohio, desirous of engaging in business, as merchants, in the same city, and in the same line of trade, of which the appellees had notice; that said Rawson and Charles A. Raynolds, and the appellees, then and there entered into negotiations for the sale by appellees to the said appellants of the stock of merchandise, then possessed by the appellees, in their business and trade, and of the good-will of their said business; that to induce the said Rawson and Charles A. Raynolds to make said purchase, the appellees then and there represented to them that the appellees' sales, in their trade and business, were larger than the sales of any other mercantile establishment in the same line of trade in Elkhart county, and that such sales were then and there about $30,000 per year; that the said Rawson and Charles A. Raynolds, being ignorant of the extent of appellees' business, as they well knew, relied upon and confided in the truth of said representations, and were thereby induced

to and did then and there purchase said merchandise and good-will, with the purpose and intent of continuing and carrying on said trade and business at said city, in the same store-room, a lease of which for one year they had then and there obtained for that purpose, as the appellees well knew, at and for the sum of $9,468.77, payable as follows: $1,000 cash in hand, and eight instalments, of $1,000 each, payable respectively in six, twelve, eighteen and twenty-four months, and in one, two, three and four years, from September 13th, 1875, and another instalment of $468.77, due in fifty-four months from said date, the appellees also agreeing not to engage in said trade and business in the city of Elkhart, either as principals, agents or clerks, for the period of five years thereafter; and that the notes in suit were given for three of said deferred instalments, in consideration of the purchase of said merchandise and good-will, and of said agreement, and for no other consideration whatever, the appellant John F. Raynolds executing the same as the surety of the other appellants.

And the appellants averred that said representations of the extent of the sales of goods by the appellees, in their trade and business, were false, and known so to be by the appellees, when the same were made, and were by them made for the purpose of cheating and defrauding the said Rawson and Charles A. Raynolds, in the premises, who relying thereon, as the appellees then and there well knew, were induced to buy said goods and good-will, and to pay a greater price therefor than they otherwise would have done; that, in truth and in fact, the appellees' sales in their trade and business were not then and there larger or greater than the sales of any other establishment, in the same line of trade, in Elkhart county, and were not then and there about $30,000 per year, but were in truth only about $15,000 per year; by reason whereof said good-will was of less value, to wit, $10,000 less than if said sales had been as represented; that all the instalments, due prior to the maturity of the notes then in suit, had been fully paid and satisfied, and that appellants executed to appellees

their promissory notes for each of the said instalments, to be paid as aforesaid after September 13th, 1875, which remained unpaid; and that, by reason of the premises, they had sustained damages in the sum of $10,000; and that the notes in suit, and the other notes not yet due, were without consideration. Wherefore the appellants demanded judgment that the unpaid notes be delivered up to be cancelled and be adjudged satisfied, and that said Rawson and Charles A. Raynolds recover of the appellees $6,000, and other proper relief.

In the second paragraph of their reply the appellees alleged, in substance, that on the 12th day of August, 1875, one Caroline Pratt was the owner in fee simple of certain real estate in the city of Elkhart, and the buildings thereon, in which the appellees were carrying on the business of hardware merchants and manufacturers of tin-ware, having at said date a lease of said buildings which expired in about one month from said date; that at said date, by a written agreement entered into by and between the appellees and the appellants, the appellees agreed to sell and deliver to the appellants the entire stock of hardware, stoves and tin-ware, together with the tools and stock in their tin-shop, at the actual cash value thereof in the market, the said stock and tools having at the time an actual fixed value in the market; that it was then and there agreed in said written instrument that a complete and accurate invoice of all the different items of said stock and personal property, so agreed to be sold, should be made, and that the actual market or list value of the different articles and parcels of said stock should be fixed and agreed upon at the time the said invoice was so taken, the price-list as published by Hart, Blunt & Mead, wholesale dealers, being agreed upon as the market value; and it was further stipulated in said agreement that the stock when invoiced should be paid for as follows: $1,000 in cash, when said invoice was completed, and the balance of said invoice in the same instalments mentioned in said fifth paragraph of the appellants' answer; that it was further agreed by the owner of said build-

ings, that the appellants might, if they chose so to do, retain the possession of so much of said buildings as had been previously occupied by the appellees for sale room and store-room, for one year at an annual rental of $500, payable quarterly; that in pursuance of said agreement said invoice was taken, and the actual value of said merchandise was fixed and agreed upon; that the cash value of said stock and personal property so invoiced amounted to the sum of $9,468.77; that the appellants paid the appellees the sum of $1,000, and executed their notes in accordance with the terms of said written agreement, the notes in suit being part of them, and the whole consideration of said notes being the property so invoiced; that thereupon, in consideration of said money and notes, at the appellants' request, the appellees assigned and transferred, by a certain written instrument, all the aforesaid stock, and, without any consideration or previous agreement whatever, transferred to the appellants, at their request, the " good-will " of said business, the appellants having full knowledge of the ownership of said building; that the said Caroline Pratt afterwards executed to the appellants a lease of said store for one year, at the annual rental of $500; that thereupon the appellants took possession of said stock of hardware, which was of the actual value of $9,468.77, and they also took possession of said store-rooms under said lease, which were of the actual rental value of $1,000 per annum; that the appellants had actually sold all the stock and personal property so purchased of the appellees at a large profit; that after the appellants had occupied said store-rooms and prosecuted said business for one year under said lease, the said Caroline Pratt, at their request, without any representations whatever, by a new contract then and there made, leased said store-rooms to the appellants for one year at an advanced rental, to wit, $700 per annum. Wherefore, etc.

In the third paragraph of their reply the appellees said that the " good-will," in the appellants' counter-claim mentioned,

was sold, assigned and transferred to the appellants, without any consideration whatever.

In the fourth paragraph of their reply, the appellees alleged, in substance, that at the date of the transfer of said stock of hardware, in said counter-claim mentioned, and after said stock had been sold, there being at the date of the sale of said goods and stock no agreement whatever to sell or assign any "good-will" whatever, the appellee Caroline Pratt made the following agreement with the appellants, to wit: That in consideration of a rental of $500, she then leased to the appellants a part of the premises, in which said business had been carried on, and, in connection with the making of said lease, no representations whatever were made concerning the amount of business done at or in the said premises; that said rent was regularly paid until the expiration of said lease, and at the end of each year a new lease, upon a new agreement and new consideration, was made by said Caroline Pratt, who was all the time the owner of said building and place of business, the appellants having all the time full knowledge of the reputation of said place of business, and of the amount of business which the appellees had done therein.

From the summary we have given of the appellants' counter-claim, it will be seen that they allege therein that they had agreed to pay, and had in part paid the appellees a certain sum of money for their stock in trade, for the "good-will" of their store and business, and for an agreement, on their part, that they would not engage in the hardware business, either as principals, agents or clerks, within the city of Elkhart, for the space of five years from the 16th day of September, 1875. It will be observed, also, that their counter-claim contains no allegation of fact complaining, in any manner, of either the quantity, quality, or value of the stock in trade, so purchased by them of the appellees; nor do the appellants complain therein of any breach by the appellees, or either of them, of their alleged agreement not to engage.

in the hardware business, in the capacities, within the territory or during the time specified in their contract. But it is manifest from the averments of the pleading, that the appellants have grounded their counter-claim for damages in this case solely upon the "good-will" of appellees' trade and business, which they purchased, as they say, from the appellees, in connection with their stock in trade, and their agreement, as aforesaid, not to engage in the hardware business, and for which, in part, they claim that the notes in suit were given.

The gist of the appellants' counter-claim is, that the appellees sold them the "good-will" of their trade and business, as hardware merchants, and falsely and fraudulently represented that such "good-will" was more valuable than, in fact, it was. Appellants' counsel claim that this was the substance of the counter-claim; and appellees' attorneys concede that "this is substantially a correct statement of the case." The appellants claimed that they purchased the "good-will" of a business whose annual sales were represented by the appellees to amount to $30,000. They alleged that they actually got by their purchase the "good-will" of a business whose annual sales amounted to only about $15,000, and therefore, they said that the "good-will" of the business, as it actually was, was of less value, to wit, in the sum of $10,000, than it would have been, if the annual sales of the business had, in truth, amounted to the sum represented by the appellees.

"Good-will," as property, is intangible, and merely an incident of other property. It was not in this case an incident of the stock of hardware, tools and machinery, which seem to have been the only tangible property purchased by the appellants from the appellees. As a rule, it may be said that "good-will" is never an incident of a stock of merchandise; but, generally speaking, it is an incident of locality or place, of the store-room or place of business. The appellants did not allege, in their counter-claim, that they had purchased or procured from the appellees any right or title to, or interest

in, their store-room or place of business, or that the appellees owned or controlled, or had any possessory right, or interest, in such store-room or place of business. But the appellants did aver, that they obtained, as the appellees well knew, a lease for one year of the store-room or place of business theretofore occupied by the appellees, though it was not stated from whom they obtained such lease.

The question arises, and this is the difficult and controlling question in this case, conceding that the appellees, as alleged, falsely and fraudulently represented to the appellants, to induce them to purchase, that the amount of the annual sales of their business was $30,000, when, in truth and in fact, such annual sales amounted only to about $15,000, under the facts averred and the law applicable thereto, what was the true measure of the appellants' damages by reason of such false and fraudulent representations? By what rule shall their damages be estimated?

In their brief of this cause the learned counsel of the appellants say: " We were compelled to differ with the court as to the mode of proving our damages at the trial. The theory of the * * * * court was that good-will is inseparable from the particular building in which the business was done, and that therefore the value of the good-will could only be measured by the increased rental value of the building, and, as a sequence therefrom, damages for false representations as to the amount could only be measured by showing how much greater the rental value of the building would have been if the false representations had been true. * * * The theory of the appellants was that the damages would be the difference in profits between a business of the magnitude represented and such a business as we actually got. At least we did not think the rule adopted was sufficiently favorable to our rights."

Upon the question under consideration the trial court, of its own motion, gave the jury the following instructions:

" You already understand, from the rulings of the court in

the admission of testimony, that this subject of good-will can be considered, and its value determined, only in connection with the leasehold or rental value of the building or rooms wherein the business was done, and it was in this view of the law that the court excluded any testimony as to the profits which any witness might suppose would have resulted from doing a business of one value or another, and the testimony was confined to the question, how much more would have been the rental value of the building if the business of Pratt & Co. had been $30,000 instead of $15,000 to $16,000, and I instruct you that, in this case, you must determine the damages, if you allow damages in respect to good-will, and, further, I instruct you that under the contract between these parties you can not allow damages in respect to good-will beyond the period of three years.

"By the increased rental value on account of the good-will attached is meant, not how much more money would the occupant of the building have made if the good-will had been as represented; that could never be certainly determined; but how much was the rental value increased, or would it have been increased; if attended by such a good-will how much more rent, for that place of business, would men generally pay for the purpose of carrying on there the same business for the sake of getting such good-will. In short, what is the good-will worth, fixing the value beforehand, taking the chance of realizing on it."

Taken together, these instructions contain, we think, as accurate, correct and fair a statement of the proper measure of the appellants' damages, in the case at bar, as could well be given. The case is an anomalous one, and it is difficult, if not impossible, to support the rule declared by decided cases or citations from text-books. The rule is founded, however, upon the peculiar nature of good-will as a commodity or property, and accords fully with the views on that subject already expressed in this opinion. We approve of the instructions quoted, as prescribing the best and most equitable rule, in our

opinion, for the measure of the appellants' damages, by reason or on account of the false and fraudulent representations of the appellees. Certainly we can not approve of the measure of damages which the appellants' counsel claim they were entitled to have applied in this case.

As bearing upon the questions discussed, and in support of the views expressed in this opinion, we cite in this connection the following authorities: *Squier* v. *Gould,* 14 Wend. 159; *Putney* v. *Hardy,* 99 Mass. 5; *Sieveking* v. *Litzler,* 31 Ind. 13; *Sheldon* v. *Houghton,* 5 Blatch. C. C. 285; *Chissum* v. *Dewes,* 5 Russ. 29; *Austen* v. *Boys,* 2 DeGex & Jones, 626; *Llewellyn* v. *Rutherford,* 13 Moak Eng. Rep. 328; *Cruttwell* v. *Lye,* 17 Vesey, 335; *Dougherty* v. *Van Nostrand,* 1 Hoffman Ch. 68; *Elliot's Appeal,* 60 Pa. St. 161; *Musselman's Appeal,* 62 Pa. St. 81 (1 Am. R. 382); *Baxter* v. *Conolly,* 1 Jac. & Walk. 556; Pars. Part., pp. 261 to 263; 1 Sedgw. Dam., pp. 612 to 614; Field Dam., section 286.

Our approval of the instructions quoted necessarily includes an approval of the rulings of the court in the admission and exclusion of evidence. We need not, therefore, examine these rulings in detail, for, upon the theory on which the cause was tried, the rulings complained of were manifestly correct.

We have found no error in the record which would authorize or require the reversal of the judgment.

The judgment is affirmed, with costs.

Woods, C. J., having presided at the trial below did not participate in this decision.

Filed February 1st, 1883.

, On Petition for a Rehearing.

Howk, J.—In this case the appellants' learned counsel ask a rehearing upon the ground chiefly that "the court overlooked, and did not decide," in the preceding opinion, certain questions arising upon certain instructions of the trial court, which, they insist, were erroneous. Certainly, we did not de-

cide the questions referred to ; but we did decide what we regarded as the controlling question in the appellants' case, and the one upon which their counsel seemed to rely in their original briefs for the reversal of the judgment. We do not now find it necessary to consider or decide any of the questions which appellants' counsel claim we omitted to decide in our original opinion.

In this cause the appellants, entire case and defence are stated, by way of recoupment, in the fourth and fifth paragraphs of their answer or counter-claim. To each of these paragraphs the appellees demurred, for the alleged insufficiency of the facts therein, which demurrer was overruled by the court, and to this ruling the appellees excepted. In this court the appellees assigned as cross errors the decisions of the court in overruling their demurrers to the fourth and fifth paragraphs of appellants' answer or counter-claim. If these cross errors are well assigned, and we think they are, it is manifestly immaterial what, if any, errors of law occurred at the trial, for they could not, by any possibility, injure or harm the appellants. It is well settled, both by provisions of the civil code and by the decisions of this court, that a judgment will not be reversed for any error or defect in the proceedings which does not affect the substantial rights of the complaining party. Section 398, R. S. 1881 ; *Fell* v. *Muller*, 78 Ind. 507.

As stated in the preceding opinion, the appellants' counsel concede in argument that the fifth paragraph of answer or counter-claim " covers all the matters set forth in the fourth paragraph." In our former opinion, we have given a full statement of all the allegations of fact contained in the fifth paragraph of answer or counter-claim, and this statement need not be repeated in this opinion. In discussing the sufficiency of the facts stated in this fifth paragraph, upon the demurrer thereto, the appellees' learned counsel make the following points for the decision of this court :

"*First*. There are no facts stated from which any damages are shown to have resulted to the defendants;

"(*a.*) Because it does not appear but that the defendants have done an amount of business fully equal to that which the plaintiffs represented they were doing, previous to the sale;

"(*b.*) The price agreed to be paid for the good-will is not stated, nor is it stated that the stock, good-will and monopoly, which they actually got, were worth less as a whole than they would have been if the business had been as extensive as was represented.

"*Second*. It does not appear from the answers that the defendants, as part of the transaction for which the notes were given, leased or acquired any right to the place where the business had been carried on, or that they purchased anything from the plaintiffs to which ' good-will' could attach."

We are of opinion that these objections of appellees' counsel to the sufficiency of the fourth and fifth paragraphs of appellants' answer or counter-claim are substantially well taken, and that the demurrer thereto, for the want of facts, ought to have been sustained. It does not appear from the appellants' counter-claims that the appellees owned or controlled their store-room or place of business; but it is alleged therein that the appellants had obtained a lease for one year of such store-room, not, however, from the appellees, or either of them, nor as a part of the transaction for which the notes in suit were given. The appellants did not allege in their counter-claims that they had carried on the business of hardware merchants, or any other business, in such store-room or elsewhere, for the term of one year or for any other period of time. If it might be assumed, in the absence of any averment of the fact, that, after their purchase from the appellees, the appellants did engage and continue in the business of hardware merchants, in the said store-room, they also failed to allege in their counter-claims that their own sales were not " then and there about $30,000 per year," or even more, and, if less, how much less.

If, after their purchase from the appellees, the appellants

did not engage in nor carry on the business of hardware merchants in the said store-room, and we may assume that they did not, in the absence of an averment that they did, how could they be endamaged by the appellees' representations, however false they might have been, in regard to the amount of their annual sales? If the appellants did engage in and carry on said business in the said store-room, and their sales per year amounted to $30,000 or more, as, in the absence of an averment to the contrary, it may be assumed they did, what damages could or would the appellants sustain from the appellees' false representations in regard to the amount of their annual sales? The answers to these questions will readily suggest themselves and will clearly indicate, as it seems to us, how radically and fatally defective are the appellants' paragraphs of answer by way of counter-claim. We are of opinion, therefore, that the court clearly erred in overruling the demurrer to these paragraphs, as neither of them stated facts sufficient, by way of counter-claim or otherwise, to constitute any defence to the appellees' action. *Thayer* v. *Younge*, 86 Ind. 259. Upon the statements in their respective pleadings, we think the appellees were entitled to judgment for the amount due on the notes in suit, and in such case, although manifest errors may have intervened, the judgment must be affirmed. Section 566, R. S. 1881 ; *Western Union Tel. Co.* v. *Fenton*, 52 Ind. 1 ; *Dorman* v. *State*, 56 Ind. 454 ; *McCloskey* v. *Indianapolis, etc., Union*, 67 Ind. 86 (33 Am. R. 76).

The petition for a rehearing is overruled, with costs.

Filed October 1st, 1883.