Hyland, Auditor, *et al. v.* The Brazil Block Coal Company.

Filed Feb. 18, 1891; petition for a rehearing overruled May 22, 1891.

---

No. 15,431.

HYLAND, AUDITOR, ET AL. *v.* THE BRAZIL BLOCK COAL COMPANY.

TAXES.—*Board of Equalization.—Organization.—Time of Meeting.—*A board of equalization must meet and organize as the law requires or its acts will be void. In 1889 the time for the meeting was the third Monday in June.

SAME.—*Assessment of Mining Corporations by Board of Equalization.—Notice of Meeting.—*Under the tax law of 1881, no special notice of the time of the meeting of the board of equalization is required to be given to a mining corporation, for the purpose of assessing its property rights, where such corporation has made and delivered to the proper officer a schedule of its property for appraisement and taxation. Such a corporation is bound to take notice of the time and place of the meeting of such board.

| | |
|---|---|
| 128 | 335 |
| 129 | 68 |
| 128 | 335 |
| 131 | 152 |
| 133 | 537 |
| 133 | 649 |
| 128 | 335 |
| 135 | 597 |
| 128 | 335 |
| 140 | 348 |
| 141 | 161 |
| 128 | 335 |
| 144 | 277 |
| 128 | 335 |
| 150 | 221 |
| 128 | 335 |
| 159 | 185 |
| 128 | 335 |
| 163 | 604 |
| 128 | 335 |
| 168 | 360 |

Hyland, Auditor, *et al. v.* The Brazil Block Coal Company.

SAME.—*Assessing Capital Stock of Mining Corporation.*—Where all the tangible property of a mining corporation is duly returned for taxation, and it represents the entire capital of the corporation, the capital stock could not be assessed for taxation under the tax law of 1881 and its amendments.

SAME.—*Tender of Amount Due.—Injunction.—Assessment of Capital Stock.*—In a proceeding to enjoin the collection of a tax assessed upon the capital stock of a mining corporation, it is not necessary to first make a tender of the amount of tax due upon its tangible property, where such property is fully returned and fairly valued.

SAME.—*Power of Board of Equalization.*—The board of equalization can not make property of any kind subject to assessment for taxation if there is no statute conferring that authority upon it.

STATUTE.—*Re-Enactment.—Effect.*—The re-enactment of a statute makes the statute as re-enacted the law of the State.

From the Clay Circuit Court.

*W. B. Schwartz, J. A. McNutt* and *H. Teter*, for appellants.

*G. A. Knight* and *A. W. Knight*, for appellee.

ELLIOTT, J.—The complaint of the appellee alleges that it is a mining corporation organized under the laws of this State; that its nominal capital stock is $619,300; that on the 1st day of April, 1889, its entire capital was invested in real and personal property in the counties of Clay, Owen and Parke; that it had no surplus capital or accumulations of any kind; that on the day named its capital stock had neither a market value nor an actual value over and above that of its tangible property; that its entire capital stock was represented by its tangible property, and was of no greater value than that property; that it listed for taxation all of its personal property, rights, credits, money and effects in the counties named, and in the several townships therein; that all of its personal property was appraised at its fair cash value; that, in addition to listing its tangible personal property, it made out and delivered to the assessor of the township, wherein its principal office was located, a sworn statement of its capital stock, as required by section 6357, R. S. 1881; that in such sworn statement it fixed the value

of its capital stock at that of its tangible property; that on the 1st day of April, 1889, it owned no property of any kind except such as it listed and returned for taxation; that the total value of all of its property was $140,042, and that this sum represented the actual value of its capital stock; that on the 17th day of June, 1889, a board of equalization convened at the court house in the city of Brazil, and on the 5th day of its session it assumed to assess and did assess the capital stock of the appellee at the value of fifty per cent. on its face value; that such assessment fixed the total value of appellee's capital stock at $309,650; that the board ordered that from the total value so fixed upon the capital stock the tangible property of the appellee, $140,042, should be deducted, and that the board also directed that the difference between the sums named, $169,608, should be added to the property of the appellee for taxation. It is charged that the proceedings of the board of equalization were illegal for the following reasons:

"1st. That by so assessing the capital stock and adding $169,608 to the assessed value of the plaintiff's other and tangible property already upon the tax duplicate, the pretended board of equalization has unlawfully imposed upon the plaintiff a double tax on the same property owned and held by the plaintiff on the 1st day of April, 1889.

"2d. That by the illegal action of the pretended board the property of the plaintiff is taxed unlawfully at a greater rate than is assessed upon private individuals.

"3d. That said additional sum and increased assessment is not equal and uniform taxation, and imposes upon the plaintiff the injustice and burden of paying a twofold or double tax upon the same property.

"4th. That the pretended board of equalization 'illegally, wrongfully and without jurisdiction,' made such assessment and did not in any manner give plaintiff any notice whatever of such proposed action, nor did it cause, as the law

directs, a written notice to be issued by the auditor as the law requires, nor was any notice of any kind given, issued or published in any newspaper of the proposed action of the board."

It is further alleged that the board of equalization was illegally convened and organized for the reasons :

" 1st. That it did not meet on the 1st Monday in June, 1889, as required by law, but did meet on the 3d Monday in June, 1889, in violation of law.

" 2d. That no notice was given by the auditor of Clay county, and published, or posted two weeks before the 1st Monday in June, 1889, of the meeting of the board of equalization.

" 3d. That the orders, acts and assessments of the board were made and performed after the expiration of fifteen days from the 1st Monday of June, 1889, and after the time limited by law had expired within which the board could legally act."

Section 129 of the act of 1881 (Acts 1881, p. 656) provides for the formation and duties of a county board of equalization, and declares that it shall meet annually on the third Monday of June. It also provides that two weeks' notice of the time of meeting shall be given by publication. Section 6397, R. S. 1881. Section 1 of an act of the same year provides that "After the present year the county board of equalization shall meet,  *  *  on the first Monday of June, annually." Section 6398, R. S. 1881. The act first mentioned was passed on the 29th day of March, 1881, and that last mentioned on the 16th day of April of the same year. Both took effect immediately. On the 9th day of March, 1889 (Acts 1889, p. 367), an act was passed amending section 129 of March 29, 1881, and in this latter act the time for the meeting of the board of equalization was named as the third Monday in June of each year. Elliott's Supp., section 2127. This was done by incorporating the language

of section 129 of the act of March 29th, 1881, in the later act.

The question which comes first in natural order is whether the board of equalization met on the day fixed by law, for if the session held in June, 1889, was not held at the time designated by law, the proceedings of the board were ineffective. Such a tribunal must meet and organize as the law requires. *State, ex rel.,* v. *McGinnis,* 34 Ind. 452 ; *Shoemaker* v. *Board, etc.,* 36 Ind. 175.

Whether the meeting on the third Monday in June, 1889, was legal must depend upon the effect of the act of March 9th, 1889. That act is unquestionably valid, for section 129 of the act of March 29th, 1881, had not been amended. It stood on the statute book as an act subject to amendment, for the act of April 16th, 1881, did not profess to amend it. Counsel do not contend, although the case has been very fully and ably argued, that the act of 1889 is invalid, nor could such a contention be even plausibly maintained, for the act of March 29th, 1881, had not been previously amended. If affected at all it was in part repealed by an independent statute. The question, therefore, is what is the effect of the re-enactment of section 129 of the act of March, 1881 ?

There can, of course, be no doubt that counsel are right in their position that the legislative intention must govern, but that intention must be found in the statute. Nor can there be any doubt that repeals by implication are not favored. Neither can there be any doubt that, where there is a manifest repugnancy between the earlier and later statutes, the earlier must be deemed to be repealed. If, therefore, there is an irreconcilable conflict between the act of 1889 and that of April, 1881, the last named act must be deemed to be repealed.

There is a direct repugnancy between the two acts, for it is impossible to reconcile their provisions ; one or the other must give way, and, under the settled rule, it must be the

earlier. By incorporating the language of section 129 of the act of March 29th, 1881, in the amendatory act of 1889, the former statute was re-enacted. The re-enactment of a statute makes the statute as re-enacted the law of the State. *Sage* v. *State,* 127 Ind. 15; *Mayne* v. *Board, etc.,* 123 Ind. 132. It is impossible to escape the conclusion that the act of 1889 fixes the time for the meeting of county boards of equalization, and hence it must be held that the board convened at the proper time.

The next question is whether the appellee was entitled to notice in addition to that given of the time of the meeting of the board. It can not be doubted that some notice must be provided for by law, since there can be no due process of law where there is no notice. *Kuntz* v. *Sumption,* 117 Ind. 1. If, however, notice is provided, and it is of such a character as to inform the taxpayer that his lists will be revised, and to give him a reasonable opportunity to be heard, the constitutional requirement is met. We think there was such notice in this case. The time for the meeting of the board is fixed by law, so that all interested must take notice. The duties of the board are, also, fixed by law, so that all are bound to know what those duties are. Notice of the time of the meeting was given as the law directs. Section 89 of the act of 1881 requires mining corporations to deliver to the assessor a sworn statement and schedule, and provides that the statement and schedule shall be laid before the county board of equalization. It is also provided that the board shall " value and assess the capital stock in the manner provided in this act." Section 6357, R. S. 1881.

It is evident that the appellee could not be ignorant of the fact that its property would be valued and assessed by the board of equalization, for a public law made it the duty of the appellee to furnish a statement for consideration by the board, and also made it the duty of the board to make the assessment. The case is entirely unlike that of an individual taxpayer, for he can not know that the board will take any

action upon his list, whereas the corporation knows, as matter of law, that the board will act upon its statement, since that is the principal purpose for which the sworn statement is required. It is manifest that neither the principle decided in *Kuntz* v. *Sumption, supra,* nor the line of reasoning there pursued, is relevant to the question here presented. As the statement furnished by the corporation presents the matter to the board for action, and the corporation knows that the board must act upon it, there is no valid reason for asserting that there was no notice. The act of 1889 can not be considered as an independent law, standing apart from all other statutes; on the contrary, it must be considered as part of one great body of law. *Humphries* v. *Davis,* 100 Ind. 274; *Rushville, etc., Co.* v. *City of Rushville,* 121 Ind. 206 (213), and cases cited. When thus considered, it is quite clear that the term " person," as there used, does not mean corporations that are required by statute to file sworn statements and schedules to be laid before the board of equalization. It is, indeed, far from true that the term " persons " always embraces corporations.

The question we next encounter is whether the board of equalization had authority to assess the capital stock in the manner it did. It will be observed that section 89 provides that the assessment of the capital stock shall be made " in the manner provided in the act." Section 6357, R. S. 1881. This measures and defines the authority of the board, since its sole authority is to assess in the manner prescribed by the · statute. It is necessary, therefore, to ascertain whether the statute authorizes the capital stock of mining corporations to be assessed in cases where tangible property is duly returned for taxation and represents the entire capital of the corporation. Our statute contains these provisions :

Sec. 36. " The property of incorporated companies shall not be listed and assessed at a greater rate than such prop-

erty would be if it were the property of private individuals or firms."

Sec. 39. "In all cases where the *tangible property or the capital* stock of any incorporated company is listed and assessed under this act, the shares of capital stock of such incorporated companies shall not be listed and assessed." Sections 6305, 6308, R. S. 1881.

It seems clear to us that the statute prohibits the assessment of the capital stock where the entire capital is invested in tangible property which is duly listed and returned for taxation. We are not here concerned with any question as to what the Legislature has power to do, for the question here is as to the meaning and effect of a statute. Nor are we concerned with any question as to the proper basis of assessment where the capital of the corporation is not invested in tangible property or where the capital stock has some value over and above that property, for in this instance the entire capital is invested in, and represented by, the property duly listed for taxation.

The authorities which declare that where part of a tax is due that part must be tendered, do not apply to this case, for here no tax whatever is due upon the capital stock. The plaintiff does not seek to defeat a part of an assessment, but it seeks to prevent the levy of an assessment upon property not subject to taxation. The statute does not, as we have seen, authorize the assessment of the capital stock, and, as there is no property subject to taxation, there can be no part of an assessment which the appellee is bound to pay. While we approve to the fullest extent the doctrine of such cases as *City of Logansport* v. *Case*, 124 Ind. 254, and *Morrison* v. *Jacoby*, 114 Ind. 84, we deny its applicability to a a case like this, where an attempt is made to assess property which is not subject to taxation. If the appellee were seeking to avoid part of the assessment levied upon its tangible property, the cases to which we have referred would be

of controlling influence, but that is not what it is seeking to do.

There is no question before us as to what the rule would be in a case where the tangible property of a corporation is not fairly valued, for the complaint avers that it was fairly valued, and that the value placed upon it was accepted as correct by the board of equalization.

As it is made to appear by the allegations of the complaint that the capital stock did not exceed in value the tangible property returned for taxation, there is no question as to the effect of the finding of the board of equalization; for the question is whether the board can assess property which, by law, is not subject to taxation. If the property,—that is, the capital stock,—had been subject to taxation, then the question as to whether the value placed upon it by the board is final and conclusive would be presented, but as the confessed allegations show that the capital stock was not subject to taxation the board had no authority over it, since it is clear that the board can not make property of any kind subject to assessment where there is no statute conferring that authority upon it.

The question whether an assessment may be levied upon capital stock to the extent to which it exceeds in value the tangible property is not presented by the complaint, nor is the question whether corporate franchises may be taxed where they have a value over and above the tangible property and the capital stock, presented for our decision. It is evident that no provision of the statute confers authority to tax the capital stock where the whole value of the stock is in the tangible property, and it is very doubtful whether it could be done under the Constitution. Section 21 of the act of March 29th, 1881, section 6290, R. S. 1881, simply provides at what place capital stock shall be assessed. Section 89, as we have seen, does not provide for the assessment of capital stock where the whole value of the stock is in the tangible property, and section 91 is merely auxiliary to section 89 of

the same act. Sections 6357–6359, R. S. 1881. While it may not be double taxation to tax capital stock to the extent that it exceeds in value the tangible property, it certainly can not be doubted that it can not be assessed where there is no statute authorizing its assessment.

We have been unable to find any copy of an entry or recital showing the filing of a bill of exceptions, so that we can not consider questions arising upon the motion denying a new trial.

Judgment affirmed.

COFFEY, J., did not take any part in the decision of this case.

Filed Jan. 31, 1891; petition for a rehearing overruled May 22, 1891.