Hart v. Smith.

## HART ET AL. v. SMITH ET AL.

[No. 19,825. Filed June 27, 1902.]

TAXATION.—*Newspapers.*—*Good-Will.*—*Constitutional Law.*—The good-will that attaches to the business of conducting a newspaper belonging to a copartnership is not, in and of itself, property, within the meaning of the constitutional mandate requiring the General Assembly to provide for a uniform system of taxation of all property, except certain property that may be exempted by law. *pp. 184-188.*

SAME.—*Newspapers.*—*Good-Will.*—*Statute.*—The general act concerning taxation, §8408 *et seq.* Burns 1901, being silent on the subject of taxation of good-will, declaring in §8410 that "all property within the jurisdiction of this State, not expressly exempted, shall be subject to taxation," and §8411 providing that personal property shall include certain described property, not mentioning good-will, does not authorize the taxation of the good-will of a newspaper. *pp. 188-190.*

SAME.—*Newspapers.*—*Good-Will.*—No method is provided by law for the taxation of the good-will of a newspaper, since good-will is an incident of the business as a going concern, and the tax law

Hart v. Smith.

requires that the various items constituting a newspaper plant must be assessed separately. *pp. 191, 192.*

TAXATION.—*State Board of Tax Commissioners.—Review of Acts by Court.*— Where the state board of tax commissioners has determined that shares of stock held by a company have a certain taxable value, such action, in the absence of fraud, is not reviewable by the courts. *pp. 192–194.*

SAME.—*State Board of Tax Commissioners.—Injunction.*—Where the state board of tax commissioners acts without jurisdiction, the courts have the power to arrest the consequences of its acts. *pp. 194–197.*

SAME.—*Injunction.—Collateral Attack.*—The proceeding to enjoin the state board of tax commissioners from taxing the good-will of a business being informal, the rule that obtains requiring that the infirmity appear on the face of the record in a collateral attack does not apply. *p. 197.*

SAME.—*State Board of Tax Commissioners.—Increase of Assessment.—Injunction.*—Where part of an increased assessment made by the state board of tax commissioners was legal and part illegal, and there is no means of ascertaining the amount of the legal portion, the whole increase was properly held to be invalid. *pp. 197, 198.*

CONSTITUTIONAL LAW.—*Courts.*—The Supreme Court will not decide a constitutional question when it can perceive another ground on which it can properly rest its decision. *pp. 198, 199.*

From Marion Superior Court; *J. L. McMaster*, Judge.

Suit by Delavan Smith and Charles R. Williams to enjoin William H. Hart, Auditor of State, from certifying an assessment to the auditor of Marion county made by the state board of tax commissioners against the Indianapolis News Company and also to enjoin the treasurer of Marion county from collecting the tax. From a judgment in favor of plaintiffs, defendants appeal. *Affirmed.*

*W. L. Taylor*, Attorney-General, *Merrill Moores, C. C. Hadley, M. M. Hugg* and *Frank McCray* (*amicus curiæ*) for appellants.

*F. Winter* and *Clarence Winter*, for appellees.

GILLETT, J.—This suit involves the validity of an assessment for taxation, made, on appeal, by the state board of tax commissioners against appellees, Delavan Smith and Charles R. Williams, as partners, engaged in the publication of a newspaper, known as the Indianapolis News, under the name and style of the Indianapolis News Company.

The state board added to appellees' assessment of $47,-657.31, based on their accounts and tangible personal property, the latter being itemized, the additional sum of $352,340, without in any manner indicating what items, if any, it applied to, and it is charged, in effect, that said increased assessment was based on the good-will of appellees' said business, and on its membership in a news gathering corporation, known as the Associated Press, which membership it may be inferred, although the allegations of the complaint are somewhat vague upon the subject, was based on appellees' ownership of eight shares of the stock of said corporation. It is not necessary to set out any further averments of the complaint, as the case, except as hereinafter mentioned, has been argued on the substantial question as to the authority of the state board in the premises. Appellants demurred to the complaint below, their demurrer was overruled, and they excepted. As they elected to abide their demurrer, and declined to plead further, a decree was rendered in appellee's favor.

We address ourselves first to the determination of the question whether the good-will of the Indianapolis News Company is subject to taxation. The power of taxation is one of the highest attributes of sovereignty. When society erects a state, creating the three great departments of government,—the legislative, the, executive, and the judicial,—it is not necessary to grant to the legislative department the power of taxation; for, in the absence of other restriction, that authority vests in the legislative department by virtue of the general grant of legislative power. *State, ex rel.,* v. *Smith,* 158 Ind. 543; *State Board, etc.,* v. *Holliday,* 150 Ind. 216, 42 L. R. A. 826. The Constitution of Indiana ordains that, "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only, for municipal, educational, lit-

erary, scientific, religious, or charitable purposes as may be especially exempted by law." Art. 10, §1. This provision requires all property, not especially authorized to be exempted, to be taxed, but beyond it there is room for the abundant exercise of legislative authority. Indeed, the question as to the right to subject good-will to the burden of taxation is not a question of legislative power, but a question of legislative will.

If it be granted that good-will is property, yet it cannot be taxed unless the General Assembly has authorized it. Notwithstanding the constitutional requirement as to the taxation of property, such provision is not self-executing, and a tax can not be laid unless the General Assembly selects the particular species of property to bear the burden of taxation. *Riley* v. *Western Union Tel. Co.,* 47 Ind. 511; *Hyland* v. *Brazil Block Coal Co.,* 128 Ind. 335; *State Board, etc.,* v. *Holliday, supra.* So, in any event, the question is one of legislative intent. If, however, good-will is property, and, therefore, ought to be taxed, then, in the construction of the legislative scheme of taxation, we ought to impute to the General Assembly an intent to obey the constitutional mandate, if its enactments fairly admit of such a construction. *Orr* v. *Baker,* 4 Ind. 86; *Trustees, etc.,* v. *Ellis,* 38 Ind. 3; *Read* v. *Yeager,* 104 Ind. 195. We therefore proceed to an examination of the question whether good-will is property. Despite the almost universal recognition at the present day of good-will as in the nature of property, the law on this subject is of comparatively recent growth. The cases greatly confound the thing itself with the means of transferring it, and with the rights an assignee acquires in order to effect that transfer. There is a kind of local good-will, that Lord Eldon characterized as "nothing more than the probability, that the old customers will resort to the old place." *Cruttwell* v. *Lye,* 17 Ves. 335, 346. Good-will of this character may inhere in real property and give to it additional value. As civiliza-

tion became more complex, the realization was forced upon the courts that the right to carry on an established business, and to represent that it is the old business that is carried on, is often a thing of value, since men were willing to pay for the privilege and contended for it at the forúm, and therefore the courts have, by evolutionary processes, so adjusted themselves to conditions as to treat such privileges, even where not connected with real estate, as in the nature of assets. The trend of authority is that they will be so regarded and protected, not only where they are made the subject of express contract in connection with the voluntary sale or the bequest of a business, made in connection with the disposition of property, but, except where the business is of a purely personal character, depending for its existence solely upon the skill of the person carrying it on, that such interests will be protected in the winding up of partnership affairs and in cases of compulsory sales. On many questions relative to the disposition of these interests there is a most distressing conflict and uncertainty in the adjudged cases, and we have no disposition to tempt such a field. Some of the cases seem to treat good-will as property, while in other cases courts have attained the result by the exercise of control over the assignor. In cases of voluntary transfers this seems eminently proper, since it is not honest to sell the custom and steal away the customers; to pocket the price, and then to recapture the subject of the sale. See *Chadwick* v. *Covell,* 151 Mass. 190, 23 N. E. 1068, 6 L. R. A. 839, 21 Am. St. 442; *Trego* v. *Hunt,* (1896) App. Cas. 7.

We regard it as clear, however, that good-will is not in and of itself property, but that it is an incident that may attach to, or, in some cases, be connected with it. In *Rawson* v. *Pratt,* 91 Ind. 9, 16, it was said: " 'Good-will,' as property, is intangible, and merely an incident of other property. It was not in this case an incident of the stock of hardware, tools, and machinery, which seem to have been

Hart *v.* Smith.

the only tangible property purchased by the appellants from the appellees." In our judgment, in a case of this kind the transfer of a good-will, involving the right to carry on the old business and to represent that it is the old business that the purchaser is carrying on, is really based, not so much on the sale of the property that is itself conveyed, as it is upon the sale of the business as a going concern. This seems to be the view of the Supreme Court of the United States, as expressed in *Metropolitan Bank* v. *St. Louis Dispatch Co.,* 149 U. S. 436, 446, 13 Sup. Ct. 944, 947, 37 L. Ed. 799, where it was said: "Undoubtedly, good-will is in many cases a valuable thing, although there is difficulty in deciding accurately what is included under the term. It is tangible only as an incident, as connected with a going concern or business having locality or name, and is not susceptible of being disposed of independently. * * * As applied to a newspaper, the good-will usually attaches to its name rather than to its place of publication." Assuming these statements of the federal supreme court to be the law, as we are disposed to, and it will be realized how shadowy a thing a good-will is in the case of a newspaper. As Professor Parsons said, in his work on Partnership (4th ed.), §181: "The only proper signification of the word must be, that benefit or advantage which rests only on the *good-will,* or kind and friendly feelings of others. * * * It is a hope or expectation, which may be reasonable and strong, and may rest upon a state of things that has grown up through a long period, and been promoted by large expenditures of money. And it may be worth all the money it has cost, and a great deal more; but it is, after all, nothing more than a hope, grounded on a probability."

In the case of a good-will attaching to real property, the good-will becomes an integral part of the value of such property, and, in the case of a corporation possessing a good-will, the value thereof may find a reflex in the value

of its shares of stock. We hold, however, that the good-will that attaches to the business of conducting a newspaper belonging to an individual or a copartnership is not, in and of itself, property within the meaning of the constitutional mandate; and while it might be taxed, since the law protects it, yet the *a priori* argument, that the Constitution commands it to be taxed, is gone. We think that this is the proper doctrine in all such cases, where good-will does not inhere in particular, tangible property. We therefore approach the question, whether, in the absence of a constitutional requirement that such an interest should be taxed, there is otherwise to be found in existing legislation language that, of its own force, warrants such a conclusion.

Taxes are burdens that must necessarily be laid, and the government is not to be regarded as a public enemy in imposing them. Such laws ought not to be construed from the standpoint of the taxpayer alone or of the government alone. The real question is, what was the intent of the General Assembly. Whatever may be the rule in the construction of the federal revenue laws, where severe penalties and forfeitures are often attached, we think, that, under a revenue system like ours, it is the duty of the courts, even in construing statutes providing for taxation that go beyond the constitutional requirement that all property shall be taxed, to construe such statutes without bias or prejudice, and that in such cases the courts should only lean towards strictness to the extent that it is justifiable on the ground that it is to be fairly and justly presumed that the General Assembly, which possesses a power so comparatively unrestrained in its force and searching in its extent as the power of taxation, has so shaped the law as, without ambiguity or doubt, to bring within it everything that it was meant should be embraced. *United States* v. *Breed,* 1 Sumn. 159; *United States* v. *Sapinkow,* 90 Fed. 654; Cooley, Taxation (2d ed.), 273.

It is contended by the learned Attorney-General that the

assessment of good-will is warranted, as property, under the general act concerning taxation. We have heretofore expressed our view that good-will is not property in the ordinary sense of the term, but we proceed to examine the act itself. By such act the General Assembly has provided for the taxation of polls and property. It is declared that "all property within the jurisdiction of this State, not expressly exempted, shall be subject to taxation." §8410 Burns 1901. The next section provides that personal property shall include certain described property, not mentioning good-will. We think that this section, whereby the General Assembly undertakes to define real and personal property for the purposes of taxation, affords strong evidence that it was not intended to tax good-will in a case like this. The maxim *expressio unius est exclusio alterius* is quite applicable in view of the legislative definition. The entire act is silent on the subject of the taxation of good-will, as an incident to personal property or otherwise, as applied to any such case as this; and the conclusion that good-will, as such, is to be taxed could only be arrived at by interpreting the act with a mind bent on squeezing everything out of it that its words do not necessarily withhold. Certainly, as applied to a case not within the sweep of the constitutional requirement, this is not a justifiable method of interpretation.

As said by Mr. Justice Story, in *United States* v. *Wigglesworth,* 2 Story 369, 373; Fed. Case No. 16,690: "It is, as I conceive, a general rule in the interpretation of all statutes, levying taxes or duties upon subjects or citizens, not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operation so as to embrace matters, not specifically pointed out, although standing upon a close analogy." As more tersely expressed by Mr. Justice Nelson: "Duties are never imposed on the citizen upon vague or doubtful interpretations." *Powers* v. *Barney,* 5 Blatchf. 202, 203, Fed. Case

Hart *v.* Smith.

No. 11,361. This expresses the views of the courts generally. *Hartranft* v. *Wiegmann,* 121 U. S. 609, 616, 7 Sup. Ct. 1240, 30 L. Ed. 1012; *American, etc., Co.* v. *Worthington,* 141 U. S. 468, 12 Sup. Ct. 55, 35 L. Ed. 821; *Adams* v. *Bancroft,* 3 Sumn. 384, Fed. Case No. 44; *Sewall* v. *Jones,* 9 Pick. 412; *Vicksburg, etc., R. Co.* v. *State,* 62 Miss. 105; *Mayor, etc.,* v. *Hartridge,* 8 Ga. 23; *Dean* v. *Charlton,* 27 Wis. 522; *Gurr* v. *Scudds,* 11 Exch. 190; *Wroughton* v. *Turtle,* 11 Mees. & Wels. 561; *Williams* v. *Sangar,* 10 East 66; *Denn* v. *Diamond,* 4 Barn. & Cr. 243; *Tompkins* v. *Ashby,* 6 Barn. & Cr. 541; *Oriental Bank* v. *Wright,* L. R. 5 App. Cas. 842; *Pryce* v. *Directors, etc.,* L. R. 4 App. Cas. 197; *Daines* v. *Heath,* 54 Eng. C. L. 938; *Gosling* v. *Veley,* 64 Eng. C. L. 328, 407; Potter's Dwarris, Stat., 255.

It would be against usage to tax the good-will of a partnership or individual. It is to be presumed that the General Assembly was familiar with the fact that it had been the practice to omit to tax good-will in such cases, and, if it had been its purpose so to do in the enactment of the general tax law of 1891, the circumstances called upon that body to give clear expression to its purpose. Its omission in that particular can only be construed as an acquiescence in the practice that before obtained. *State Board, etc.,* v. *Holliday,* 150 Ind. 216, 42 L. R. A. 826. The reasons that we have thus far advanced against the construction of the taxation act that appellants contend for, may, in a substantial sense, be said to be a reiteration of the following language of Lord Denham, C. J., in *Burder* v. *Veley,* 12 Ad. & E. 233, 247: The law requires clear demonstration that a tax is lawfully imposed. No act of parliament vests in the parish officers such a power as these have exercised, or recites that such a power exists by common law or custom. No book of reports affirms it. No such usage in fact prevails in the land. An opposite usage prevails."

Hart *v.* Smith.

Nor can we uphold the assessment as a tax on the property as a unit. In the case of a good-will that is an incident of land, the increased value inheres in the property itself; and, in the case of most domestic corporations, that which the law assesses,—their stock,—if worth more than their tangible property, stands for all that the corporation represents, including good-will. It is provided by statute that, for the purpose of assessing property for taxation, a copartnership shall be treated as an individual. §8423 Burns 1901. In either case the schedule contemplates that the various items shall be assessed separately. Even if good-will were regarded as an incident of personal property, it can not be said that any one item of such property— as, for instance, a printing press—is worth any more because it belongs to one person than if it belonged to another. If there is a good-will that can be said to be an incident of personal property at all, it must be an incident of the assembled items of personal property that may be said to constitute the tool or implement wherewith the business is carried on, and our revenue law can not be tortured into a construction that authorizes an aggregating of personal property. Such property, upon the plain reading of the schedule, is required to be distributed among the appropriate items thereof. The good-will of a newspaper, conducted by an individual or copartnership, is an incident of the business as a going concern, and, as the business can not be treated as a unit, it follows that this is a case where the General Assembly has omitted to provide a regulation whereby good-will can be taxed. *State Board, etc.,* v. *Holliday,* 150 Ind. 216, 42 L. R. A. 826. The case of *Adams Express Co.* v. *Ohio,* 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683, s. c. on petition for rehearing, 166 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965, cited by appellants' counsel, is not in point. That case settles the proposition that it is competent, under statutory authority, to tax

as a unit a going concern, yet the case really depends upon the fact that the State has enacted such legislation.

As to the element of appellees' holding of shares of stock in the Associated Press, we are of opinion that if the case rested alone upon the complaint that appellees' shares therein were taxed, no case would be presented for our interference. We do not doubt, if a number of newspapers enter into an agreement that each will provide the others with news, or that through a common agency such news is to be supplied to all, that the right under such contract is not a subject of taxation under existing statutes. Just what connection, if any, the shares of stock that appellees hold has with the privilege of receiving news, does not appear; and we are not advised as to what service, if any, appellees perform as payment, in whole or in part, for the advantage that they receive. The fact, as pleaded, that the court of last resort in the state where such corporation is organized has held that it is bound to furnish its news to all who apply, on the same terms that it exacts from its members, may be an important element tending to depreciate the value of such stock; but we can not therefore say that the stock has no value, since a person who had regularly acquired stock in the corporation might thereby without contest receive the attendant privilege upon the terms fixed, while an outsider might have to vindicate his right, if any, by a long contest in the courts.

Section 8410 Burns 1901, that is quoted above, provides that all property within the jurisdiction of this State, not expressly exempted, shall be subject to taxation. The next section contains a definition of personal property for the purposes of taxation, and among other items of personal property therein mentioned is included "all shares in foreign corporations, except national banks, owned by inhabitants of this State." The listing of such shares is also provided for by the schedule. §§8460, 8463 Burns 1901. Mr. Cook, in his valuable work on Corporations, volume 2

Hart *v.* Smith.

(4th ed.), §565, says: "It is undoubtedly within the constitutional power of the legislature of a state to enact a statute that persons residing in that state, who are stockholders in a corporation created by another state, shall be taxed on their shares of stock at their residence within the former state.  This principle of law is based on the fact that shares of stock are personal property; that they are distinct from the corporate property, franchises, and capital stock; that they follow the domicile of their owner like other personal property, and that consequently he may be taxed therefor wherever he may reside.  It accordingly is a question of policy and expediency with a state whether or not it will tax its citizens who are stockholders in foreign corporations."

It is not material that the shares of stock, as such, do not directly earn money.  If the holding of such shares is the basis of a privilege that in and of itself is worth money, we see no reason why such value should not inhere in such shares.  The fact that the right, if any, the stock represents can not be transferred without the consent of the Associated Press may take from the stock a market value, but it may have a value nevertheless.  Section 8458 Burns 1901 provides that in determining the value of personal property the township assessor "shall be governed by what is the true cash value, such being the market or usual selling price at the place where the property shall be at the time of its liability to assessment, and if there is no market value, then the actual value."  We take it, however, that counsel for appellee would not dispute the proposition that if the shares of stock have any value they are subject to taxation.  Counsel evidently rely upon the averment that the shares of stock "have no market value and no actual value."  If this were true, we admit that such shares ought not to be taxed.  But whether they had or no is a question of fact that the state board—a body having *quasi* judicial

powers—was required to determine; and if, without fraud, that body has determined that such shares had a value, then this court has no power to review such conclusion. *Pittsburgh, etc., R. Co.* v. *Backus,* 133 Ind. 625, 653, s. c. 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031; *Youngstown Bridge Co.* v. *Kentucky, etc., Co.,* 64 Fed. 441; *McLeod* v. *Receveur,* 18 C. C. A. 188, 71 Fed. 455; *State Railroad Tax Cases,* 92 U. S. 575, 610, 23 L. Ed. 663; *Templeton* v. *Pierce County,* 25 Wash. 377, 65 Pac. 553.

As said by Mr. Justice Magruder, in *Burton Stock Car. Co.* v. *Traeger,* 187 Ill. 9, 12, 58 N. E. 418: "The determination of the value to be fixed on property liable to be assessed 'is not, in the absence of fraud, subject to the supervision of the judicial department of the state.'" The state board may have made a mistake of fact in determining the value of such shares of stock, but we can not relieve on that ground alone. In *McLeod* v. *Receveur, supra,* an assessment by said board was attacked on the ground that a bridge over the Ohio river was assessed at $200,000, when its real value, in so far as it was within the State of Indiana, was only $45,000. It was further alleged that such assessment was made by the state board by mistake and misrepresentation as to the southern boundary of the State at that point. In disposing of the question the court said: "Here there is no suggestion of fraudulent conduct upon the part of the board of equalization. Its officers were charged with the duty of assessing the value of the property of the bridge company lying within the State of Indiana. They did not seek or attempt to make any assessment upon property without the boundaries of the State. It was their duty to ascertain the extent of the property of the bridge company lying within the State, and to declare its fair value. It is, in effect, charged that they committed an error of judgment, being misled to believe that the boundary line of the State was below low-water mark in the Ohio river, and so placed upon the property lying within

the State a greater valuation than they otherwise would have done; in other words, that, through a mistake of fact and error of judgment, the property of the bridge company lying within the State was excessively valued. The board of equalization had, however, jurisdiction of the subject-. matter, and, as observed by Chief Justice Ryan, 'had jurisdiction to commit the error;' and its determination, however erroneous, can not be impugned collaterally. Jurisdiction existing, any order or judgment is conclusive in respect of its own validity in a dispute concerning any right or title to be derived through, or anything done by virtue of, its authority. It is true that, with respect to these special tribunals for assessment of property, evidence of excessive valuation is sometimes admitted; but it is so received in connection with other testimony to establish a charge of fraudulent conduct on the part of the board.". Judge Showalter dissented in the above case on the ground that the state board had no jurisdiction to assess property in Kentucky, but the case probably rests on the ground, expressed in the opinion, that the board "did not seek or attempt to make any assessment without the boundaries of the State."

The questions involved in this case that have been argued by the respective parties have been questions that went to the merits of the right of the state board of tax commissioners to tax the appellees, and, as the parties stand in the attitude of waiving all other questions, we have been disposed to consider, so far as we could properly do so, the substantial questions in the case, but it is insisted by an *amicus curiae,* who, by leave of court, has filed a brief, that the effort of such board to tax the good-will of appellees' business ought also to be upheld, because this proceeding is a collateral attack on the action of the board. Although such board is composed of men who, for the most part, otherwise occupy high official station, and although such board performs duties of very great importance to the

State, yet such tribunal is nevertheless one of granted powers; and, if it acts without jurisdiction, the courts have power to arrest the consequences of its acts. In *State Board, etc.,* v. *Holliday,* 150 Ind. 216, 42 L. R. A. 826, this court sustained a proceeding to enjoin the state board from listing and valuing the life insurance policies for taxation that were held by the appellees in said action. In *Senour* v. *Rulh,* 140 Ind. 318, 321, this court, in answer to the claim that the appellee therein was precluded by the action of the county board of review, said: "When we have found that the property was not within the jurisdiction of the State, we have found the absence of an element necessary to the validity of the board's action, and, in such case, the action is void, and may be attacked collaterally." The proposition that courts may relieve from assessments laid without jurisdiction finds support in the authorities without this State. *Santa Clara County* v. *Southern Pac. R. Co.,* 118 U. S. 394, 6 Sup. Ct. 1132, 30 L. Ed. 118; *Central Pac. R. Co.* v. *California,* 162 U. S. 91, 114, 16 Sup. Ct. 766, 40 L. Ed. 903; *St. Mary's Gas Co.* v. *Elk County,* 191 Pa. St. 458, 43 Atl. 321; *Keokuk, etc., Bridge Co.* v. *People,* 161 Ill. 132, 43 N. E. 691; *Maxwell* v. *People, ex rel.,* 189 Ill. 546, 59 N. E. 1101; *Montis* v. *McQuiston,* 107 Iowa 651, 78 N. W. 704; *Poe* v. *Howell* (New Mex.), 67 Pac. 62; *State* v. *Ernst,* (Nev.), 65 Pac. 7. In *Central Pac. R. Co.* v. *California, supra,* the Supreme Court of the United States, said: "Undoubtedly if the board of equalization had included what it had no authority to assess, the company might seek the remedies given under the law to correct the assessment, so far as such property was concerned, or recover back the tax thereon, or, if those remedies were held not exclusive, might defend against the attempt to enforce it." Judge Cooley recognizes that the courts may relieve from an assessment when some principle of law is violated in making it, and when the complaint is not merely

Hart *v.* Smith.

of an error in judgment. Cooley, Taxation, 748, 777, and notes on pp. 750, 776.

We think that in a case of this kind it is not proper to apply the rule that obtains when a judgment of a court of general jurisdiction is collaterally attacked,— that the infirmity must appear on the face of the record. These proceedings are summary and, to a large extent, informal, and there are no pleadings that tend to make the question decided certain. It is proper, in a case like this, where values have not been extended on the specific items of the taxpayer's schedule, to show affirmatively that he was assessed with an item that was not taxable under the laws of the State. This could be done without contradicting in any way the record that the board made, if we may assume that the averments of the complaint are true. The following cases, by implication, at least, support this view: *Pittsburgh, etc., R. Co. v. Backus,* 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031; *Central Pac. R. Co. v. California,* 162 U. S. 91, 112, 16 Sup. Ct. 766, 40 L. Ed. 903, S. c.; *People v. Central Pac. R. Co.,* 105 Cal. 576, 38 Pac. 905.

In *Santa Clara Co. v. Southern Pac. R. Co.,* 118 U. S. 394, 6 Sup. Ct. 1132, 30 L. Ed. 118, the question was whether the state board of California had included within the assessment of defendant in error certain fences along its right of way that the board had no power to assess against it. No record of the assessment as made by the board was introduced, and no other documentary evidence of such assessment was offered, except the official communication of said board to the local assessor, which showed only the aggregate valuation of the company's franchise, roadway, roadbed, rails, and rolling-stock. The trial court made a special finding, in which it found that said board "did knowingly and designedly include in the valuation of said roadway the value of fences erected upon the line between said railway and the land of coterminous proprietors."

In passing upon the question thus presented the Supreme Court, at page 415, said: "It appears, as already stated, from the evidence, that the fences were included in the valuation of the defendants' property; but under what head, whether of franchise, roadway, or roadbed, does not appear. Nor can it be ascertained, with reasonable certainty, either from the assessment roll or from other evidence, what was the aggregate valuation of the fences, or what part of such valuation was apportioned to the respective counties through which the railroad was operated. If the presumption is, that the state board included in its valuation only such property as it had jurisdiction under the state constitution to assess, namely, such as could be rightfully classified under the heads of franchise, roadway, roadbed, rails, or rolling-stock, that presumption was overthrown by proof that it did, in fact, include, under some. one or more of those heads, the fences in question. It was then incumbent upon the plaintiff, by satisfactory evidence, to separate that which was illegal from that which was legal—assuming for the purposes of this case only, that the assessment was, in all other respects, legal—and thus impose upon the defendant the duty of tendering, or enabling the court to render judgment for, such amount, if any, as was justly due." It was further held by the court that the whole assessment was invalid, as it could not be determined what was the amount of that part of the assessment that was valid.

It is our conclusion, as it is alleged that the good-will of appellees' business was assessed, and as there is no means of determining the amount of that portion of the increase that the state board of tax commissioners had authority to add, that the action of said board as an entirety, in so far as it added to appellees' assessment, was properly held to be invalid.

Appellees' counsel have argued the question as to an unlawful discrimination against appellees in the administra-

tion of the tax laws. It is settled that the court will not decide a constitutional question when it can perceive another ground on which it can properly rest its decision. We therefore decline to consider this question.

Judgment affirmed.