HAMMOND BEEF AND PROVISION COMPANY

*vs.*

MARTIN W. BEST.

Cumberland. Opinion April 18, 1898. .

*Insolvency.   Discharge.   Corporation.   Residence.   U. S. Const. 14th. Amend.*
*R. S., c. 81, § 19; Stat. 1893, c. 278.*

A corporation created by the laws of another state has its residence in such state, and does not gain a citizenship in this state by doing business here, although it occupies a store here, which is managed by clerks and agents residing here, and pays taxes on its stock of merchandise here.

The presumption that the citizenship of stockholders is identical with that of the corporation is one of law, not to be defeated by averment or evidence to the contrary.

A corporation is a "person" within the meaning of the Fourteenth Amendment to the Federal Constitution of the United States and other constitutional clauses.

A debt due a corporation created in another state is not barred by the debtor's discharge in insolvency here,—the creditor not participating in such proceedings, nor accepting a dividend, although all the usual notices to creditors be served on its resident agent in the manner described for service by sections 19 of chapter 81 of the revised statutes; and notwithstanding the act of 1893, providing that no action shall be maintained by any creditor against any debtor, who has received his discharge in insolvency, upon any demand of claim that would have been discharged by insolvency proceedings if proved against such debtor's estate.

AGREED STATEMENT.

This was an action of assumpsit to recover for goods sold and delivered by the plaintiff to the defendant, and was returnable to the Superior Court for Cumberland county, April term, 1897. The parties agreed to the following statement of facts:—

"Hammond Beef and Provision Company, the plaintiff, is a legally organized corporation under the laws of the State of Illinois, being organized and created under and in accordance with the provisions of "An Act concerning corporations," approved April 18th, 1872, and in force July 1st, 1872, and all acts amendatory thereof.

The location of the principal office of said corporation is in Chicago in the County of Cook and State of Illinois. Its capital stock is twenty thousand dollars. The object for which it is formed is: Dealing in meats, provisions and other merchandise. The date of its organization is May 3rd, 1895. Its duration is twenty-five years.

"Said corporation has transacted business in Portland, in the County of Cumberland and State of Maine, from the date of its organization to the date of the writ in this case, and has had a store or place of business in said Portland during said time where it has transacted and conducted business as aforesaid by different agents or managers. Since May 26th, 1896, it has transacted business by its agent or manager, Albert C. Bertch, who is its present agent. Said corporation had paid, prior to the time of the sale and delivery of the goods sued for, one tax to the city of Portland, to wit, in the year 1896, assessed April 1, of that year, on an assessed valuation of three thousand two hundred dollars personal property. The rental of the store in which its business is transacted in said Portland is $177.51 per month. The volume of its business in said Portland has been about one hundred and fifty thousand dollars a year during the time it has done business in said Portland.

"The defendant, Martin W. Best, an inhabitant of this state and resident in Deering in said county of Cumberland, purchased of the plaintiff corporation, in September and October, 1896, at its said place of business in said Portland, goods amounting in value to three hundred and fifty dollars, and was legally indebted therefor on the seventh day of November, A. D. 1896, and said goods have never been paid for. On said seventh day of November, A. D. 1896, said Best, being then an inhabitant of this state and residing in said county, was legally adjudged an insolvent debtor by the Insolvency Court of said county of Cumberland, as appears by the records thereof, of said court. On the seventh day of December, 1896, said defendant, being then such resident and inhabitant, was granted by said court, a discharge under the provisions of section 62 of chapter 70 of the Revised Statutes of Maine and acts amend-

atory thereof and additional thereto, from all his debts and liabilities contracted prior to the commencement of his insolvency proceedings and named in the schedule annexed to his affidavit filed in said court, as appears by the record of said court. His said debt to the plaintiff corporation was among those named in said schedule.

"Said plaintiff corporation had due and legal notice of said insolvency proceedings and took no part in said proceedings, and refused so to do. The defendant was, on the day of the date of the plaintiff's writ, and still is, an inhabitant of this state.

" The plaintiff existed as a corporation as aforesaid at the time of sale and delivery of the goods sued for and ever since, and did, and is still doing business as aforesaid by its agent, having a place of business in Portland in this state."

*Clarence Hale and A. F. Belcher*, for plaintiff.

*Clarence W. Peabody*, for defendant.

SITTING: PETERS, C. J., HASKELL, WISWELL, STROUT, SAVAGE, JJ.

PETERS, C. J. The plaintiff is a corporation created under the laws of the state of Illinois, having its home office in Chicago. Its business is dealing in meats, provisions and other similar merchandise. The corporation ever since its creation has hired a store in Portland where it has transacted a volume of business in its line of about one hundred and fifty thousand dollars a year, employing as its agents or managers persons who are residents of this state. The corporation was assessed on April 1, 1896, on considerable personal property in its possession in Portland. The defendant, a citizen of this state, in September and October, 1896, bought of the plaintiff the bill of goods sued for in this action, and in November afterwards went into insolvency, receiving his discharge regularly in December of the same year. He named the plaintiff's account in his schedule of debts due from him, and the corporation was served with all the notices usual in proceedings of insolvency, but took no

notice of them, and has neither proved its claim nor accepted a dividend on it.

The defendant concedes that, if the plaintiff were a natural person instead of a corporation, and in the same condition that the corporation is, his discharge in insolvency could not be successfully pleaded in discharge of the debt. *Pullen* v. *Hillman*, 84 Maine, 129. But it is contended that the same rule that would be applied to an individual creditor living in a state other than our own should not apply where the creditor is a foreign corporation occupying a store and doing business in this state. We do not see that in principle there is any force in such a distinction. Creditors without any corporate authority, who have their residence out of the state, may hire and occupy stores and sell merchandise within the state, and their debts contracted here not be affected by their debtor's insolvency, and why may not a foreign corporation just as well have the same immunity?

The defense endeavors to set up as the justification for a difference between the rights of the two classes of creditors, creditors incorporated and those not incorporated, a provision of R. S. ch. 81, § 19, which reads as follows: "And in all suits and proceedings at law or in equity against any foreign or alien company or corporation established by the laws of any other state or country, and having a place of business within this state or doing business herein, service of the writ, bill, petition, or other process is sufficient, if made by leaving an attested copy thereof with the president, clerk, cashier, treasurer, director, agent, or attorney of such company or corporation, or by leaving such copy at the office or place of business of such company or corporation, within this state." The argument in behalf of the defendant is that the plaintiff, although a foreign corporation, is subjected to all the provisions of our insolvent laws, just as much as our home corporations are, because it has an established place of business here, in consequence of which a statutory service can be made upon it through its agents in any proceedings against it in our courts. This is a novel proposition which we do not find to have ever been directly presented before. We think, however, that the position as to the effect of the statute in this case

is more specious than correct. A corporation or a person may be amenable to state-jurisdiction for some purposes and not for all purposes. The principle which protects a foreign debt from the insolvent proceedings of the debtor is more comprehensive than any possible effect of a statutory notice, whether regarded as actual or only constructive notice, in legal proceedings against the creditor in our courts. The foreign corporation may under the statute be drawn into court; but when it gets there, all of its legal rights are preserved to it, one of which is that the collection of its debt shall not be barred by insolvency proceedings instituted by its debtor, unless the creditor voluntarily participates therein in some way. It is a defense against such proceedings that the corporation (or individual) is a creditor actually residing in another state—is a citizen of such other state. Such creditor does not become a citizen of this state by being temporarily here or by having a business agent or manager here. The creditor must live and reside here in order to be bound by insolvency proceedings here.

The defendant invokes aid for his position from certain expressions found in judicial opinions to the effect that this rule of exemption would not prevail where the creditor is within the territorial jurisdiction of the state, so that service of process can be made on him; the defendant contending that this corporation comes within such a category. As an illustration of the position which he seeks to maintain, the defendant quotes from the case of *Pullen* v. *Hillman,* supra, a passage in the opinion delivered for the court by Mr. Justice EMERY, as follows: "Ability to serve process within the State is, therefore, the test of the court's power to acquire jurisdiction in any proceeding. If at the beginning of the insolvency proceedings, the process of the court of insolvency could have been served on the plaintiff within the State, the court could have acquired jurisdiction over him by such service. The situation at that time, not at the date of the contract, is the criterion. If the plaintiff was then a citizen of this State, he could have been served with process and subjected to the jurisdiction of the court, although he may never before have been within the State, and although the contract may have been made, and was to be per-

formed in another state. So much will be conceded by the defendant. But it follows, that if the plaintiff was not then a citizen of this State, (at the time of the insolvency proceedings,) no process could have reached him and he could not be subjected to the court's jurisdiction even though for all his life before, he may have resided within the State."

The quoted lines are a part of the argument in the opinion of that case, where the point decided was that the creditor's note was not discharged by insolvency proceedings entered into by the maker in Maine, although the note was given here when both parties resided here, the payee afterwards removing from this state to New York before the insolvency proceedings were commenced. We can have no doubt that the learned justice meant merely that the phase of that case would have been different had service in the insolvency proceedings been made on the creditor while in this state as a resident and citizen here, and not merely as a temporary sojourner; and much less did he intend by his words to imply that service of process on an agent here would be effectual to extend personal jurisdiction over the creditor in this state. His discussion was of a principle and not of forms of procedure. But notwithstanding that different reasons may have been assigned, even if it be so, by judges or jurists, as the origin of or foundation for the doctrine which we espouse in the present case, the doctrine itself has been supported by a long line of leading authorities.

If this corporation was ever a citizen of Maine it was also a citizen of Illinois at the same time, and therefore a citizen of both states simultaneously, and that is a legal impossibility. After some vacillating decisions it is now generally if not universally settled that a corporation is a resident and citizen of the state where it was created, and can never so change its residence as to obtain citizenship elsewhere; and that its stockholders are conclusively presumed to be residents of the same state. These presumptions, although somewhat forced and conventional, are at the same time of logical bearing and absolutely necessary for the protection of business and property, and essential to the proper administration of justice in all the courts of our country both Federal and State. Time has proved this to be so,

In *Saint Louis and San Francisco Ry. Co.* v. *James*, 161 U. S. 545, it is declared that the presumption that the citizenship of stockholders is identical with that of the corporation is one of law, not to be defeated by allegation or evidence to the contrary. In *Shaw* v. *Quincy Mining Co.*, 145 U. S. 444, Mr. Justice Gray, after quoting Chief Justice Taney's remark that a corporation must dwell in the place of its creation and cannot migrate to another sovereignty, says this statement has often been reaffirmed by the United States Supreme Court "with some change of phrase, but always retaining the idea that the legal existence, the home, the residence, the domicil, the habitat, the citizenship of the corporation can only be in the state by which it was created, although it may do business in other states where their laws permit." Of course it logically follows that no amount of business done away from home can operate to forfeit the citizenship at home. In our own state there are pertinent decisions on the question. *Hobbs* v. *Manhattan Ins. Co.*, 56 Maine, 417; *Chafee* v. *Fourth Nat. Bank*, 71 Maine, 528. So there are in Massachusetts. *Guernsey* v. *Wood*, 150 Mass. 503; *Phoenix Nat. Bank* v. *Batcheller*, 151 Mass. 589; *Regina Flour Mill Co.* v. *Holmes*, 156 Mass. 11. The same court has also held, by a majority opinion, that a discharge in insolvency under the laws of that commonwealth is not a bar to an action on a debt due to a partnership one member of which never was a resident there, although the two others were residents. *Chase* v. *Henry*, 166 Mass. 577. That case is much more radical than any doctrine necessary to maintain our conclusion in the case at bar.

Another defense is set up to the action depending on the effect to be accorded to the act contained in chapter 278 of our Laws of 1893, reading as follows: "No action shall be maintained in any court in this state against any inhabitant of this state, who has obtained a discharge from his debts under the insolvent laws of this state, upon any claim or demand of any name, kind or nature that would have been discharged by said insolvency proceedings if proved against said estate." Admitting that this court, in *Silverman* v. *Lessor*, 88 Maine, 599, held that this act was unconstitu-

tional as applying to creditors out of the state who are to be regarded as persons, the defendant contends that the plaintiff corporation is not a person within the meaning of the Fourteenth Amendment to the constitution and other constitutional clauses. This view might have had some support in the earlier cases, but is without any influential support at this day. That corporations are persons within the meaning of the first section of the Fourteenth Constitutional Amendment, and that they "may invoke the benefit of those provisions of the constitution which guarantees to persons the enjoyment of property, or afford them the means for its protection, or prohibit legislation injuriously affecting it," has been emphatically affirmed in comparatively recent cases. *Santa Clara Co.* v. *Sou. Pac. R. R. Co.*, 118 U. S. 394, 396; *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181; *Minn. & St. Louis R. R. Co.* v. *Beckwith*, 129 U. S. 26, 28; see, also, *United States et al.* v. *Northwestern, &c., &c., Co.*, 164 U. S. 609.

*Defendant defaulted.*